WILLIAM V. MORSE & CO. v. J. F. STEINROD & CO.
M. E. SMITH & CO. v. J. F. STEINROD & CO.
S. FARWELL & CO. v. J. F. STEINROD & CO.

[FILED MARCH 11, 1890.]

1. Preference of Creditors: FRAUDULENT CONVEYANCES. A debtor in failing circumstances may give a creditor adequate security by way of mortgage upon his personal property to secure a *bona fide* debt, but he cannot in this manner convey all his personal property, greatly in excess of sufficient security, and thus hinder and delay other creditors in collecting their claims against him without subjecting himself to the charge of a fraudulent disposition of his property.

2. ———: ———. Where a debtor in failing circumstances executed a mortgage upon "all and every part of the stock of general merchandise owned, carried on, and controlled by said party * * * in the city of F. to the value of about $19,000, subject to a mortgage of $2,600," to secure certain alleged notes aggregating about $5,300, and it appeared that there was no debt due the mortgagee, but the mortgage was in the nature of indemnity against loss for signing certain notes of the mortgagor as security, there being no proof that the mortgagee had paid or would be required to pay any portion of said notes, *held*, sufficient to support the charge of a fraudulent disposition by the debtor of his property.

3. ——— : RESTRICTIONS: ATTACHMENT: ASSIGNMENT. The com-
mon-law right of a debtor to prefer creditors is very much
restricted in this state by virtue of the attachment, assignment,
and other laws, and will not be applied in any case where a just
and fair distribution of the proceeds of the debtor's property
can be made among all his creditors.

4. **Evidence** examined, and *held*, to be sufficient to justify the at-
tachments.

ERROR to the district court for Fillmore county.   Tried
below before MORRIS, J.

*Charles B. Kellar, Montgomery & Jeffrey, John D. Car-
son,* and *Walter Fifield,* for plaintiffs in error.

*John Barsby,* and *Maule & Sloan, contra.*

MAXWELL, J.

These cases depend upon, substantially, the same facts,
and, by stipulation, were submitted together.

It appears from the record that, for a considerable length
of time prior to June 25, 1888, the defendants had been
conducting a mercantile business at Fairmont, Nebraska;
that on the 15th of March of that year the defendants
executed to J. O. and J. B. Chase a chattel mortgage on
"all the stock of groceries and boots and shoes carried in
stock" by the defendants, to secure one note for $1,139.43,
due June 15, 1888, and one note for $1,500, due September
15, 1888.   The record fails to show whether or not any
part of these notes has been paid, or the amount of money
actually loaned to the defendants.

On the 28th of the same month the defendants executed
a chattel mortgage upon "all and every part of the stock
of general merchandise owned, carried, and controlled by
said first parties in and about the building of Chase &
Clark in the city of Fairmont, county of Fillmore, state of
Nebraska, to the value of about $19,000, subject, however,
to a mortgage of $2,639.43 upon certain parts of said stock,

dated March 15, 1888." This mortgage purported to secure a note for $1,000, due May 28, 1888; one note for $1,500, due June 28, 1888; one note for $1,500, due July 28, 1888, and one note for $1,300, due August 28, 1888.

Neither of these mortgages was recorded until the 26th of June, 1888. The real consideration for the last mortgage is shown to have been the signing by Chase of certain notes for the defendants as surety. The particular notes so signed are not set out, nor does it appear that none of them had been paid.

On the 23d of June, 1888, the defendants executed to John Barsby, "trustee for Irwin B. Chase and all other creditors of J. F. Steinrod & Co.," a mortgage of "all the goods and merchandise, consisting of boots and shoes, hats and caps, dry goods, clothing, groceries, carpets, ladies' and gents' furnishing goods, the intention being to convey all the property of any kind whatever belonging to the mortgagee now in the storeroom occupied by the mortgagee in Fairmont, Nebraska, and in the cellar underneath, and also all the notes and accounts owing by various persons in Fillmore county, Nebraska, to said firm, subject, however, to a mortgage existing in favor of Irwin B. Chase, for himself and for the Union Bank of Fairmont, Nebraska. The understanding is, that said Barsby, as trustee for said creditors, is to take charge of said property, and to sell the same for cash in the regular way, and to use the money in paying off the claims of the said creditors as fast as the same can be done, after paying all the necessary expenses in carrying out this trust in accordance with its terms. This mortgage is to cover all goods in warehouse on lot west of Chase & Clark's hardware store; also the safe and their store furniture."

The trustee seems to have claimed that he took possession under the mortgage, but this is denied by himself and others. On the 25th of June, 1888, he sent a telegram to W. V. Morse & Co. as follows: "Steinrod & Co. have

turned over all partnership property to me in trust for all creditors." He also at the same time sent a like telegram to D. M. Steele & Co.

The attorneys for the plaintiffs in error thereupon took the first train for Fairmont, and after consulting with the local attorneys went to Geneva, the county seat, and instituted actions by attachment.

The evidence shows that an espionage was kept on the plaintiffs' attorneys, and when it was found that they had gone to Geneva the object was surmised to be the issuing of attachments, whereupon the defendants at once executed a large number of chattel mortgages covering all the partnership property, the Chase mortgages being given the priority. Afterwards the attachments were dissolved and the property discharged from the attachment liens. From which orders the cause is brought into this court on error. The motions to discharge were upon two grounds: First, that the facts stated in the affidavits were not sufficient to authorize the issuing of the attachments; and, Second, that the allegations therein were untrue.

Some of the claims were not due and it is alleged that the attachments were dissolved because the grounds of belief were not set out in the affidavits.

There is no special finding as to the cause for which the court discharged the attachments, and as its orders applied to all, in cases where no question is made as to the sufficiency of the facts, we must presume that it discharged them upon the ground that the plaintiff had failed to sustain the charge of a fraudulent transfer of the property.

There is but little conflict in the testimony, and it very clearly shows that the charge made in the affidavits for the attachments was true. A creditor may secure his own debt by taking adequate security, but he cannot cover up all of a debtor's property so that other creditors cannot reach it, where such property greatly exceeds in value his claim. The law was never intended to permit a debtor to

place a blanket mortgage on all his personal property to secure a debt of but a small portion of the value of such property and thus prevent other creditors from appropriating the same to the payment of their claims. The fact that the claim of a creditor is *bona fide* is but one circumstance, although a very important one, which entitles him to relief. Other creditors have rights in the premises which he must respect by limiting his security to sufficient amount to satisfy his own claim.

The mortgage executed on the 28th of March purported on its face to secure a debt for a large amount—nearly one-third of the value of the goods as stated—while in fact no debt existed, but it was made to cover a mere contingent liability. Chase had not assumed the payment of these notes, nor any of them. He was to pay them if the principal failed to pay the same. To what extent payments have been made we are not informed.

The assignment by Steinrod & Co. was also made with Chase's knowledge and apparent consent. It is true that nothing is claimed under this assignment. It was actually made, however, and the plaintiffs notified to that effect. If the plaintiffs were willing to accept of such assignment and take what could be obtained thereby, they could do so. If not, they should get nothing. Such is the effect of the conduct of Steinrod & Co. in this case, if not of the Chases. We cannot give our assent to such a disposition by a debtor of his property. The debtor must act in good faith in the application of his property to the payment of his debts. If he does not, and conveys it without adequate consideration, he makes himself liable to a charge of fraudulent disposition of his property. The common-law right of a debtor to prefer his creditors is very much restricted in this state by virtue of the law in relation to attachments, assignments, etc., and will not be applied where a just and equitable distribution of the proceeds of the debtor's property can be made among all creditors. The evidence,

however, fails to show that the Chases' mortgages were given to secure *bona fide* debts.

No other mortgages were introduced in evidence, although the county clerk testifies that others were given and filed for record June 25 and 26, 1888.   It is evident also that the other mortgages were executed for the express purpose of hindering and delaying the plaintiffs, and while the principals therein had nothing to do with the transaction, yet the men employed by them had this purpose in view.'

We do not care to comment upon the evidence at length.

It is a matter of surprise that with a just and equitable assignment law that would divide the proceeds of the property equally among all creditors, the defendants, who appear to have had nearly property enough to satisfy all claims against them, should not have made an assignment under the statute and thus have done, as far as possible, justice to all.

The rights of the mortgagees holding mortgages to secure *bona fide* debts are not involved in this case and are not decided.

The judgment of the district court is reversed, the attachments reinstated, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.