JOHN V. FARWELL COMPANY v. WILLIAM E. WRIGHT ET AL.

FILED NOVEMBER 21, 1893.    No. 5033.

1. **Fraudulent Conveyances:** PREFERRED CREDITORS. A debtor in failing circumstances has a right to secure, or pay in full, a portion of his creditors to the exclusion of others, and whether in so doing he is acting with a fraudulent purpose is a question of fact and not of law. (*Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 800.)

2. An intention on the part of a debtor to defraud can-
not be inferred merely from the fact that he desired to and did
prefer certain of his creditors. (*Jones v. Loree*, 37 Neb., 816.)

3. Attachment: RIGHT OF ACTION ACQUIRED AFTER ISSUANCE
OF WRIT. An attachment must stand on plaintiff's cause of
action as it existed when the affidavit for an attachment was
filed and the writ issued; and if the plaintiff, at the date of the
issuing of the attachment, does not own the claim for which he
seizes the defendant's property, he cannot afterwards, by pur-
chasing such claim, assert it by amendment or otherwise as
against the property seized under the attachment and by virtue
thereof.

4 ———: ———: GROUND TO DISCHARGE. Where a plaintiff
brought suit, alleging as a cause of action his ownership of cer-
tain notes, then past due, made and delivered to him by the de-
fendant, and at the same time filed an affidavit for attachment
in which such notes were made the basis of such claim against
the defendant, and caused the property of the defendant to be
seized under said attachment, and it afterwards appeared that
plaintiff was not the owner of said notes, or any of them, at the
time of bringing such suit and instituting such attachment pro-
ceeding and seizing said property, *held*, that the attachment
should be dissolved, although plaintiff, after the seizure of de-
fendant's property, became the owner of said notes, and owned
them at the time of the hearing of the motion to discharge the
attachment.

ERROR from the district court of Buffalo county. Tried
below before HAMER, J.

The opinion contains a statement of the case.

*R. A. Moore* and *John T. Wentworth*, for plaintiff in
error:

The mortgages were voluntarily made without the
knowledge of some of the mortgagees. By the mortgages
Wright & Gregg conveyed all their property. The mort-
gages were, therefore, fraudulent and void, as being against
the assignment law of this state. (Ch. 6, Comp. Stats.;
*White v. Cotzhausen*, 9 Supreme Ct. Rep., 309; *Kellog v.
Richardson*, 19 Fed. Rep., 70; *Kerbs v. Ewing*, 22 Fed.

Farwell v. Wright.

Rep., 693; *Freund v. Yaegerman*, 26 Fed. Rep., 812; *Liming v. Kyle*, 31 Neb., 649; *Straw v. Jenks*, 43 N. W. Rep. [Dak.], 941; *Harkrader v. Leiby*, 4 O. St., 602; *Dickson v. Rawson*, 5 O. St., 224; *Burrows v. Lehndorff*, 8 Ia., 96; *Lampson v. Arnold*, 19 Ia., 479; *Bonns v. Carter*, 20 Neb., 566.)

The mortgages are void because they are executed upon property in value greatly in excess of the debts secured. (*Thompson v. Richardson Drug Co.*, 33 Neb., 714; *Morse v. Steinrod*, 29 Neb., 108; *Brown v. Work*, 30 Neb., 800.)

*Lamb, Ricketts & Wilson* and *Marston & Nevius, contra:*

It affirmatively appears from the petition and the amended petition that the plaintiff did not have at the time the attachment was taken out, nor yet at any time before the order dissolving it was entered, any cause of action against the defendants upon the supposed notes attempted to be sued on in this case. The attachment was properly dissolved. The plaintiff, by a subsequent purchase of the notes, cannot assert his claim against property seized under the attachment. (Wade, Attachment, sec. 72; *Bowen v. School District No. 3, Phelps County*, 10 Neb., 266; *Hamilton v. Johnson*, 32 Neb., 730; *Berry v. Hardman*, 12 Ala., 604; *Rick v. Thornton*, 69 Ala., 473; *Estlow v. Hanna*, 75 Mich., 219; *Pope v. Hibernia Ins. Co.*, 24 O. St., 481.)

The plaintiff is estopped to deny the validity of the first chattel mortgage by levying the writ of attachment subject to it; by buying up that chattel mortgage and asserting its validity; and by selling the property under the attachment and bidding it in subject to the mortgage. (*Russell v. Dudley*, 3 Met. [Mass.], 147; *Kellogg v. Secord*, 3 N. W. Rep. [Mich.], 562; *Mandelson v. Paschen*, 37 N. W. Rep. [Wis.], 815; *Delaware & Hudson Canal Co. v. Bonnell*, 46 Conn., 9.)

The trial court having found the issues of fact in favor of the defendants upon the evidence, this court will not re-

verse the decision unless manifestly erroneous. (*Grimes v. Farrington*, 19 Neb., 45; *Britton v. Boyer*, 27 Neb., 522.)

None of the mortgages are open to the objection that they were made without the knowledge or consent of the mortgagees. It appears in the testimony that notice was immediately given to all the parties of the execution of the mortgages, and that such security was ratified and approved by the mortgagees prior to the attachment. In all such cases chattel mortgages are valid. (*First Nat. Bank of Emporia v. Ridenour*, 27 Pac. Rep. [Kan.], 150; *Bierbower v. Polk*, 17 Neb., 276; *Fletcher v. Martin*, 25 N. E. Rep. [Ind.], 886.)

RAGAN, C.

On May 4, 1891, William E. Wright and Charles H. Gregg, under the copartnership name of Wright & Gregg, were engaged in mercantile business in the city of Kearney, Nebraska; and on said date, being largely indebted and in failing circumstances, they executed chattel mortgages on their stock of merchandise as follows: (1) To the Kearney National Bank, $3,575.00; (2) to L. C. Gregg, $1,207.75; (3) to Seigel & Bro., $2,970.95; (4) to Super, Marshall & Co., $635.82. These mortgages were all duly filed on said date in the office of the county clerk of Buffalo county, and possession of the mortgaged property turned over to one Lyon for the mortgagees. The mortgages were made liens on the property covered by them, in the order named above, and were all given for honest debts owing at that time by Wright & Gregg to the mortgagees.

Wright & Gregg had for some time been dealing with the John V. Farwell Company, of Chicago, Illinois, and on the 16th day of February, 1891, owed that company $5,379, for which amount Wright & Gregg at that date gave the Farwell Company several negotiable notes. These notes the Farwell Company soon afterwards sold for cash, guarantying their payment, and on said May 4, 1891. and for some

months thereafter, did not own any of said notes. On said date, however, Wright & Gregg did owe the Farwell Company a balance on account contracted since February, 1891, of $638. On May 5, 1891, the Farwell Company brought suit in the district court of Buffalo county against Wright & Gregg, and claimed in the petition that Wright & Gregg were indebted to it in the sum of $5,379 on the notes mentioned above, and that said notes were still the property of said Farwell Company and due and unpaid. At the same time the Farwell Company sued out an attachment against Wright & Gregg for $6,017, and alleged in its affidavit for attachment the indebtedness of Wright & Gregg to it on the notes mentioned above, and caused a writ of attachment to be issued on said stock of merchandise, covered by said mortgages, to be seized by the sheriff. Said writ of attachment was, however, as appears from the sheriff's return thereon, levied upon said merchandise, subject to the mortgage executed by Wright & Gregg to the Kearney National Bank. On the 16th day of May, 1891, the Farwell Company filed an amended petition and affidavit for attachment. These declared not only on the notes but on the account mentioned above. On May 15, 1891, the attorney for the Farwell Company purchased of the Kearney National Bank the mortgage made to it by Wright & Gregg. This purchase was made ostensibly in behalf of and in the name of J. V. Farwell, Jr. On September 28, 1891, the Farwell Company having, in pursuance of its guaranty of said notes, taken the same up and become the owner thereof, filed another amended affidavit for attachment against Wright & Gregg, substantially the same as the first and second affidavits, but containing the additional allegation that Wright & Gregg had, by false pretenses, procured an extension of time for paying the debt represented by the notes. At this date, September 28, 1891, the cause was heard on the motion of Wright & Gregg to dissolve the attachment, and the court made an

33

order discharging the same, and from that order the Farwell Company prosecutes error to this court.

The grounds of attachment alleged in the affidavit of May 5, 1891, were that " the said defendants are about to convert their property into money for the purpose of placing it out of the reach of their creditors; that they have property and rights in action which they have concealed; that they have assigned and disposed of their property, or a part thereof, with the intent to defraud their creditors, and that the debt upon which said notes were based was fraudulently contracted by the defendants." There is no evidence in the record that Wright & Gregg, on May 5, or at any other time, " were about to convert their property into money for the purpose of placing it out of the reach of their creditors;" nor does the record contain any evidence that at the date of suing out said attachment, or at any other time, Wright & Gregg " had any property or rights in action which they had concealed;" and furthermore, the record discloses no evidence " that the debt upon which said notes were based was fraudulently contracted."

It remains to be determined, then, whether Wright & Gregg " had assigned and disposed of their property, or a part thereof, with the intent to defraud their creditors." The only claim of a fraudulent disposition made by Wright & Gregg of their property is the giving of the mortgage above mentioned.

The first contention of the plaintiff in error is that the making of these mortgages by Wright & Gregg, and their delivery of the possession of the mortgaged property to the mortgagees, or to Lyon for them, amounted to an assignment for the benefit of Wright & Gregg's creditors, and that the mortgages, not being in conformity with the assignment law of the state, are therefore void.

In *Jones v. Loree*, 37 Neb., 816, it is said: "Several chattel mortgages made and delivered simultaneously to se-

Farwell v. Wright.

cure different creditors of the mortgagor, the delivery being to one of the mortgagees, who in the transaction acts for himself and on behalf of all the other mortgagees, do not constitute an assignment for the benefit of creditors." The facts in that case were substantially the same as in the one at bar. The rule there laid down is adverse to the claim made by the plaintiff in error here.

The second contention of the plaintiff in error is that the mortgages are void because they are executed upon property the value of which is greatly in excess of the debts secured. The aggregate of the debts secured by the mortgages was $8,389.52. The evidence as to the actual value of the property is conflicting. It was valued by the appraisers when seized on the attachment, at $13,188, and it sold in bulk at public auction for something near $7,000. In *Jones v. Loree, supra,* IRVINE, C., speaking upon this point and for this court, said: "Upon the first branch of this argument it is sufficient to say that the mortgages to Loree, Mrs. Briggs, and the two Higginses are shown conclusively by the evidence to have been given at one time as part of the same transaction, Loree acting, in taking the mortgages, on his own behalf and as agent for the other mortgagees. For the purpose of considering the proportion existing between the property mortgaged and the debts secured the court instructed the jury that they were to be considered as one transaction. The reason of the rule avoiding, as against creditors, conveyances of property in value greatly in excess of a debt secured by such conveyances is that such a conveyance necessarily operates to hinder and delay, if not to defraud, other creditors; that it evinces an intention upon the part of the debtor to do more than secure the creditor preferred, and practically conclusively proves an intent upon his part to deprive other creditors of their remedies. From the nature of the transaction the creditor preferred is chargeable with notice of such design, and is shown by his act of taking grossly disproportionate

security to have participated in the fraudulent intent. But when a number of small debts are secured upon property, not disproportionate to the aggregate amount of these debts, no such effect follows and no such intention can be imputed either to grantor or grantees. This court has repeatedly sustained a series of conveyances of this character. Among such cases are *Hershiser v. Higman*, 31 Neb., 531; *Hamilton v. Isaacs*, 34 Neb., 709." And in *Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 803, it is said: "The contention of the plaintiff in error seems to be that as the value of the property mortgaged was $5,925.41, and the debt secured by the first mortgage was only $2,500, the security was so greatly in excess of the amount of the first mortgage debt as to render the mortgage fraudulent in law, whatever that may mean. But these mortgages were all made and filed on the same day and within a few minutes of each other; in other words, they were one transaction. We are not prepared to say that a mortgage would be fraudulent solely because the value of the property mortgaged was two, or even three, times greater than the debt. Whether it would be, is a question of fact for a jury or trial court and not a question of law." We cannot say that the value of the property mortgaged by Wright & Gregg was so greatly in excess of the debts for which it was pledged as to raise a conclusive presumption of fraud.

Again, it is contended by the plaintiff in error that the mortgages were fraudulent in fact, and so intended by Wright & Gregg. The evidence on which the court below acted was somewhat voluminous. It was conflicting. Some of it was presented by affidavits and some of it appears to have been given by the mouths of witnesses in the presence of the trial court; and unless we can say that the finding of the court is unsupported by competent evidence, we have no authority to disturb it. This has been so often said by the court as to render a citation of authorities superfluous.

The court below heard the witnesses.  He observed their manner of testifying, and general demeanor while on the stand.  He weighed and scrutinized the testimony, and it does not convince us that Wright & Gregg made these mortgages with any fraudulent purpose; and if it did, the mortgagees would not be affected with such fraudulent intent, unless they participated therein. (*Jones v. Loree, supra.*)  The record shows that Wright & Gregg desired to and did prefer the creditors to whom the securities were given; but an intent to defraud cannot be inferred merely from the fact that a preference is given to a certain creditor. (*Jones v. Loree, supra.*)  "A debtor has a right to prefer his creditors; to pay part in full to the exclusion of others; and he has a right to secure the debts of a part of his creditors to the exclusion of others; and this is true whether he be insolvent, or in failing circumstances, or not.  All the law requires of him is that he should act honestly; that his disposition of his property should not be made for the fraudulent purpose of hindering, delaying, or defrauding his creditors; and whether an act of a debtor in the disposition of his property is fraudulent, is always a question of fact and not a question of law.  Section 20, chapter 32, Compiled Statutes, provides: 'The question of fraudulent intent  *  *  *  shall be deemed a question of fact and not of law.'" (*Kilpatrick-Koch Dry Goods Co. v. McPheely, supra.*)

But the order of the court discharging this attachment should be sustained on other grounds, which we shall notice briefly.  On May 5 the plaintiff in error made an affidavit for an attachment that Wright & Gregg were indebted to it in the sum of $6,017 on the notes mentioned above, and on this affidavit an attachment was issued, by virtue of which the sheriff seized the entire stock of goods of Wright & Gregg.  The record discloses that the Farwell Company, at that date, did not own or have possession of any one of these notes; that it had previously sold

them for cash and had the money for them at the very time it caused said goods to be attached. The only debt that Wright & Gregg at that time owed plaintiff in error was the balance on account of some $700, and even this was not included in either the petition, in the suit brought or in the affidavit for attachment under which the goods were seized. The remedy by attachment is a harsh and summary one, a creature of the statute, and before a litigant can invoke it the law requires him not only to give a bond, but to swear to the nature of the claim he has against the defendant, that it is just, and the amount which he ought to recover; and he must own the claim on which he bases his attachment. The seizure of these goods was a wrong, a grievous wrong, and done in utter disregard of all law. To thus use the remedies of the statute is to torture them into engines of oppression. To call this "law" is to mock at justice. The fact that the Farwell Company had guarantied the payment of these notes gave it no cause of action against Wright & Gregg on them until such time as they were compelled to and did make good their guaranty, which was long after the seizure of the goods under attachment.

The amended affidavit for attachment, filed May 16, by the Farwell Company did not help the case. By this the amount due on the account was attempted to be brought in, but the false claim of indebtedness on the notes was still maintained; and the filing of the amended affidavit for attachment on September 26, in which the Farwell Company attempted to base a claim against Wright & Gregg on these notes, which the Farwell Company had at that time again become the owner of, was an attempt to put into this case a cause of action which the Farwell Company did not own on May 5, when it brought its attachment suit and seized these goods; and as it had no cause of action against Wright & Gregg on these notes at the time it brought its original action, and at the time it sued out

its first attachment, it could not after that put into such suit of attachment any cause of action which it subsequently acquired and assert it against the property seized by virtue of the original writ of attachment.

Again, the attachment writ was levied on goods, and the same were sold subject to the mortgage made by Wright & Gregg to the Kearney National Bank, this mortgage having been purchased, doubtless, by the Farwell Company. This mortgage was made at the same time the others were, and for a like purpose and under like circumstances. We will presume that the attachment writ was levied as directed by the Farwell Company, and the evidence shows that the Farwell Company notified purchasers at the time of the sale of the property under the attachment, that the goods would be sold subject to this Kearney National Bank mortgage, and the Farwell Company is now estopped from claiming that any of these mortgages were fraudulent. (*Kellogg.v. Secord*, 42 Mich., 318; *Russell v. Dudley*, 44 Mass., 147.)

We must not be understood from anything contained in this opinion as censuring in any manner the learned counsel for the Farwell Company, as the record shows he acted in the utmost good faith throughout, and on information and instruction from his client, and in ignorance of the true state of facts in the case. There is no error in the judgment of the district court and the same is

AFFIRMED.