# Harlan P. Sherwin, appellee, v. Lemuel L. Gaghagen et al., appellants.

### Filed February 7, 1894.      No. 4753.

1. **Courts of Equity:** Jurisdiction. As a general rule a court of equity will not interpose an objection to its own jurisdiction on the ground that the plaintiff has an adequate remedy at law, but will retain the cause for trial and award the relief to which the parties would have been entitled in a court of law.

2. ————: Objection to Jurisdiction: Remedy at Law: Review. Objection to the jurisdiction of a court of equity on the ground that the plaintiff has an adequate remedy at law must be made before judgment on the merits of the cause, and will not be entertained when made for the first time in this court on the appeal of the objecting party.

3. **Fraudulent Conveyances:** Chattel Mortgages: Possession by Mortgagor. A provision in a chattel mortgage for possession and power of sale by the mortgagor raises a conclusive presumption of fraud, and such conveyance will be held void as to creditors.

4. ————: Question of Fact. But in every case where the conveyance is not fraudulent on its face, the question of fraud is one of fact.

5. ————: ————: Rights of Creditors. Fraud in a chattel mortgage, by reason of a stipulation for possession and power of sale by the mortgagor, is available only to creditors whose executions or attachments are levied before delivery to the mortgagee under the terms of the mortgage.

6. ————: Excessive Security. A mortgage of personal property for a part of the purchase price thereof will not be declared void as to creditors of the mortgagor on the ground that the value of the property mortgaged is largely in excess of the amount of the debt secured.

Appeal from the district court of Lancaster county. Heard below before Chapman, J.

*John D. Pope* and *Pound & Burr*, for appellants.

*Robert Ryan, contra.*

Post, J.

This is an appeal from a decree of the district court of Lancaster county. In the petition it is charged in substance that on the 1st day of August, 1890, the appellant Gaghagen executed in favor of Sherwin, the appellee, three promissory notes, to-wit: One for $150, due September 1, 1890; one for $200, due October 1, 1890; and one for $1,225.36, due November 1, 1890; all bearing interest at eight per cent. per annum. In order to secure the notes above described Gaghagen at the same time executed in favor of Sherwin a mortgage upon a stock of drugs and fixtures in the city of Lincoln, including counters, show cases, soda fountain, etc. Immediately following the description of the property mortgaged is this recital: "The intention being to convey to said H. P. Sherwin all the drugs and fixtures heretofore sold by said Sherwin to said Gaghagen, and this mortgage is given to secure a part of the purchase money for the said drugs, fixtures, and toilet articles, said fixtures being in 1124 O street, on east side of building, in Lincoln, Nebraska. The above described chattels are now in my possession, are owned by me, and free from incumbrance in all respects, but said possession immediately is transferred to H. P. Sherwin, and all the money realized from the sale of goods to apply on said notes as same become due, by J. H. Pinkerton, agent for H. P. Sherwin." Said mortgage was filed in the office of the county clerk of Lancaster county, September 22. On the 23d day of September, the note for $150 remaining wholly unpaid, Sherwin demanded possession of the mortgaged property, whereupon it was all surrendered by Gaghagen to him to be sold in accordance with the conditions of the mortgage; but upon the representation of Gaghagen that he would in the meantime procure the means to discharge the several notes, Sherwin agreed that he would not advertise the mortgaged property for sale until September

26. That the representation aforesaid was willfully false, and Gaghagen, instead of trying to secure money with which to pay said notes within the time agreed upon for that purpose, conspired with his co-defendant, Ferguson, to cheat and defraud the plaintiff out of his claim; that in pursuance of such conspiracy said parties procured to be assigned to Ferguson certain claims against Gaghagen, amounting in the aggregate to $1,365.75, most of which were not due and many of which were purchased for fifty per cent of the face thereof; that on the 25th day of September Gaghagen voluntarily appeared before the district court and confessed judgment in favor of Ferguson for the amount of said claims; that an execution was immediately procured and placed in the hands of a deputy sheriff for service, and who within an hour thereafter, under the direction of Ferguson and Gaghagen, levied upon the property in controversy; and the defendant McClay, as sheriff, has advertised said property for sale to satisfy the judgment aforesaid; that the assignment of said claims, as well as the confession of the said judgment, was fraudulent, and designed by the defendants named to defraud the plaintiff, and that McClay, as sheriff, is using his office in order to assist the other defendants in their efforts to deprive the plaintiff of his security. The prayer is for a decree enjoining the several defendants from selling the property to satisfy the execution against Gaghagen and from otherwise interfering with his possession or the foreclosure of the plaintiff's mortgage.

The defendants joined in an answer, in which they admit the execution of the notes and mortgage by Gaghagen, the confession of judgment, the issuing of the execution and levy upon the mortgaged property as alleged, and deny the other allegations of the petition. The answer contains a charge of fraud in the following language: "Said notes were fraudulently obtained from said Gaghagen by said plaintiff through a trade made between said parties, by

which said plaintiff, by misrepresentation and misstatements, and by cheating and defrauding said Gaghagen, obtained said notes set out in said petition, as well as the chattel mortgage made to secure said notes. Defendants further answering say that the chattel mortgage set out in plaintiff's petition was fraudulent as to defendant E. I. Ferguson, who is a judgment creditor of said Lemuel L. Gaghagen; that said chattel mortgage was given to the said plaintiff by the said Lemuel L. Gaghagen, by which the said Gaghagen obtained possession of said stock of goods covered by said chattel mortgage, and allowed the said Gaghagen to retain possession of said goods and chattels and to buy and sell in his own name up to the time the said sheriff of Lancaster county by his deputy levied an execution upon the same under a valid and subsisting judgment, said judgment and execution being mentioned in the petition filed herein." It is further alleged that Gaghagen was at the time of the levy in possession of the mortgaged property, also that the plaintiff has an adequate remedy at law.

The reply is a general denial of the affirmative allegations of the answer.

The cause was sent to a referee with instructions to find the facts, and who accordingly, at the next term of court, submitted the following findings:

"1. I find that on the 16th day of July, 1890, the plaintiff Harlan P. Sherwin was the owner of a certain stock of drugs and fixtures situated in the east half of the room No. 1124 O street, in the city of Lincoln, Nebraska, and that the defendant Lemuel L. Gaghagen was the owner of a farm with certain stock, crops, and farming implements near the town of Friend, in Saline county, Nebraska.

"2. I find that on said 16th day of July, 1890, the said Harlan P. Sherwin and Lemuel L. Gaghagen made and entered into an agreement in writing whereby they agreed

20

to make an exchange of their respective property as described in the first finding.

"3. I find that said agreement was duly executed and said exchange consummated on or about the 1st day of August, 1890, and each party duly entered into possession of the property so acquired by him.

"4. I find that the said stock of drugs and fixtures was found to exceed in value the said property of L. L. Gaghagen in the sum of $1,570.36.

"5. I find that to secure the payment of said difference in value the said Lemuel L. Gaghagen made, executed, and delivered to said H. P. Sherwin three promissory notes, as follows: One for $150, due September 1, 1890; one for $200, due October 1, 1890; and one for $1,220.36, due November 1, 1890, with eight per cent interest; and to further secure the said promissory notes, said L. L. Gaghagen made, executed, and delivered to the said Harlan P. Sherwin a chattel mortgage upon the said stock of drugs and fixtures so purchased by him of said Harlan P. Sherwin.

"6. I find that said chattel mortgage was duly filed for record in the office of the county clerk of Lancaster county, Nebraska, on the 22d day of September 1890, at 4 o'clock P. M., and has ever since remained of record in said office.

"7. I find that said trade or exchange between said Harlan P. Sherwin and said Lemuel L. Gaghagen was open and fair and without fraud on the part of either party thereto, and that said notes and chattel mortgage were *bona fide*, and for a valuable consideration, and without any intention to defraud creditors or purchasers, and that no portion of the consideration for the same has failed.

"8. I find that possession of said stock of drugs and fixtures was taken by L. L. Gaghagen on or about August 1, 1890, and continued by him until the evening of September 22, 1890, and that up to said time the business was conducted and carried on in the name of said L. L. Gaghagen.

"9. I find that on the 24th day of September, 1890, the

said L. L. Gaghagen was indebted to the following persons in Saline county, Nebraska: Mrs. McDougall, note dated April 30, 1889, due July 30, 1890, for $22.10, ten per cent; T. E. B. Mason, note dated October 23, 1889, due October 23, 1890, $125, ten per cent; J. A. Copperthwaite, note dated November 4, 1889, due November 4, 1890, $210, ten per cent; Merchants & Farmers Bank, note dated May 24, 1889, due August 26, 1890, $99.25, ten per cent; W. C. Thompson, note dated February 6, 1890, due February 6, 1891, $43.00, ten per cent; Bissell & Schmidt, note dated August 9, 1890, due November 9, 1890, $61.32, ten per cent; A. E. Moeller, note dated August 7, 1890, due September 7, 1890, $314.30, ten per cent; J. D. Pope, note dated September 18, 1890, due one day after date, $200, ten per cent; First National Bank, Dorchester, Nebraska, note dated August 6, 1890, due November 6, 1890, $100, ten per cent; W. R. Williams, note dated February 13, 1890, due February 13, 1891, $83, ten per cent; Holland & Co., account, $21.85; Friend Grocery Company, account, $20.50; H. K. & H. A. Johnson, account, $20.27; making a total of $1,320.69, exclusive of interest.

"10. I find that on the 25th day of September, 1890, at about 11 o'clock A. M., the defendant Ephraim I. Ferguson filed his petition in the district court of Lancaster county, Nebraska, against the defendant Lemuel L. Gaghagen, wherein he claimed to be the owner of the notes and accounts described in the ninth finding of fact, and prayed judgment thereon against the said L. L. Gaghagen.

"11. I find that on said 25th day of September, 1890, at about 11 o'clock A. M., and at the time the said petition against him was filed, the said Lemuel L. Gaghagen duly confessed judgment in said district court in favor of said Ephraim I. Ferguson for the sum of $1,365.75.

"12. I find that there were present in the court room when said judgment was confessed, the said Ephraim I.

Ferguson and Lemuel L. Gaghagen, also J. D. Pope and L. W. Billingsley, attorneys in said cause.

"13. I find that said judgment was so confessed by said L. L. Gaghagen for the purpose of placing the creditors, whose claims were included in said judgment, upon an equal footing in respect to securing payment of their said claims, and that said judgment was so confessed under an agreement with J. D. Pope that all of said claims were to be gathered together and included in one judgment; and I further find that such agreement or arrangement was made on the 24th day of September, 1890.

"14. I find that the account of Holland & Co. was transferred to E. I. Ferguson on the evening of September 24, 1890, under an agreement whereby Ferguson was to pay fifty cents on the dollar therefor, and that payment was made by Ferguson to Holland & Co. some time subsequent to the 25th day of September, 1890.

"15. I find that the account of the Friend Grocery Company was transferred to E. I. Ferguson on the evening of September 24, 1890, under an agreement whereby Ferguson was to pay fifty cents on the dollar therefor, and that payment was made by Ferguson to J. J. Holland, agent of the Friend Grocery Company, some time subsequent to the 25th day of September, 1890.

"16. I find that the account of H. K. & H. A. Johnson was transferred to Ferguson on or about the 24th day of September, 1890, under an agreement whereby Ferguson was to pay fifty cents on the dollar therefor, and that Ferguson paid $10 therefor at some time subsequent to September 25, 1890.

"17. I find that the note of W. C. Thompson was transferred to Ferguson on the evening of September 24, 1890, and that Ferguson paid $30 therefor at the time of its delivery.

"18. I find that the note of Bissell & Schmidt was transferred to Ferguson on the evening of September 24, 1890,

and that subsequent to September 25, 1890, Ferguson paid fifty cents on the dollar therefor.

"19. That as to the other claims described in said petition, no evidence was offered by either party, and I am unable to state when the same were transferred to Ferguson, if at all, or the price paid or the time of payment therefor.

"20. I find that immediately upon the entering of said confession of judgment by said L. L. Gaghagen, an execution was ordered issued thereon, and I find that L. W. Billingsley, attorney for L. L. Gaghagen, in company with J. D. Pope, attorney for E. I. Ferguson in said cause, immediately after said execution was ordered issued, proceeded to the office of the sheriff of Lancaster county, Nebraska, and that there L. W. Billingsley, in the presence and hearing of said J. D. Pope, gave Deputy Sheriff H. V. Hoagland instructions to procure said writ of execution as soon as possible, and to levy the same on the stock of goods and fixtures at 1124 O street, and that said L. W. Billingsley informed said deputy sheriff that there were then no chattel mortgages of record against said stock and fixtures, but that there was liable to be one filed soon.

"21. I find that said J. D. Pope and L. W. Billingsley, attorneys for Ferguson and Gaghagen, respectively, had actual notice of the chattel mortgage held by said Harlan P. Sherwin on said stock at the time said judgment was confessed and before said execution was issued.

"22. I find that H. V. Hoagland, deputy sheriff, had actual notice that there was a chattel mortgage on said stock and fixtures before said execution was placed in his hands, and before he gave the same to C. W. Hoxie, deputy sheriff, for service, but I am unable to say from the evidence whether or not he was aware that said chattel mortgage was held by Harlan P. Sherwin.

"23. I find that said chattel mortgage contained a clause as follows: 'But said possession immediately is transferred to H. P. Sherwin, and all the money realized from the sale

of goods to apply on said notes as same become due, by J. H. Pinkerton, agent of H. P. Sherwin;' and I find that J. H. Pinkerton continued in the said store at all times from August 1, 1890, to September 22, 1890, but I find that he was not there in possession of said stock as agent of H. P. Sherwin.

"24. I find that on the evening of September 22, 1890, the plaintiff H. P. Sherwin took possession of the said stock and fixtures for the purpose of securing the payment of the amount due under the chattel mortgage, and to secure the payment of rent due and unpaid, and that such possession was taken under the provisions of said chattel mortgage, and according to an agreement with L. L. Gaghagen.

"25. I find that immediately after said judgment was confessed the said L. L. Gaghagen left the court house and proceeded to the store, 1124 O street, and that about five minutes after his arrival there Deputy Sheriff Hoxie appeared there with said execution and levied the same upon said stock and fixtures.

"26. I find that H. P. Sherwin, plaintiff herein, was in said store when Deputy Sheriff Hoxie entered with said execution, and that said Sherwin informed said Hoxie of his, plaintiff's, claim upon the said stock and fixtures before said Hoxie attempted to assert possession of said stock and fixtures, and immediately after said Hoxie had made minute of the levy on said writ of execution.

"27. I find that said judgment was confessed at about 11 o'clock, execution issued at 11:30, and levy made at 11:50 o'clock A. M. of the 25th day of September, 1890.

"28. I find that J. H. Pinkerton had possession of the stock and fixtures under the terms of the mortgage given by Gaghagen to Sherwin at the time the execution was levied, and that he has not relinquished such possession.

"29. I find that Samuel McClay, defendant herein, was absent from the city of Lincoln on the 25th day of September, 1890, and did not return until noon of September

26, 1890, and that he knew nothing of the confession of said judgment or the issuance and levy of said execution until his said return.

"30. I find that nothing has been paid upon the promissory note given by L. L. Gaghagen to H. P. Sherwin, and that there is now due and unpaid thereon the principal sum of $1,570.36, with $45.35 interest from August 1, to December 10, 1890, at ten per cent; total, $1,615.71.

"31. I find that at the time the said execution was levied the said deputy sheriff, Hoxie, placed F. C. Quinby, a clerk in said store, in charge of said stock and fixtures, as agent for the sheriff, and that said H. P. Sherwin claimed possession of said stock and fixtures at the same time, and I find that it was agreed that said store should be kept open and sales should proceed until the termination of this suit, and that J. H. Pinkerton should take charge of money received to await the termination of this suit, and that neither said Sherwin nor said McClay were to waive any rights thereby; and I further find that F. C. Quinby has remained in said store since said 25th day of September, 1890, as a representative of Sam McClay, sheriff.

"32. I find that the plaintiff herein has not done, or suffered to be done, any act which as a matter of fact, as distinguished from one of law, should postpone plaintiff's rights to those of any of the defendants herein.

"33. I find that there was due Harlan P. Sherwin from L. L. Gaghagen, for rent of the room occupied by the stock of drugs and fixtures, the sum of $200 on September 25, 1890, being for two months, from July 25, 1890, to September 25, 1890, at $100 per month.

"34. I make no finding upon the latter clause of defendants' second request, for the reason that the same is a question of law, to be determined by the court.

"35. I find that said stock of drugs and fixtures occupied the east side of the store-room, 1124 O street, and that there was a stock of boots and shoes on the west side

of said room, and that access to both stocks is gained through the same door.

"36. I find that Harlan P. Sherwin has not made contradictory statements as to the extent and duration of his possession of said stock of drugs and fixtures.

"The above findings are based upon the evidence in the case and are intended to cover all requests made by either party, as well as all the material issues of the case.

"Respectfully submitted,      H. J. WHITMORE,
"*Referee.*"

Exceptions were taken to several of the above findings, which were all overruled and a decree entered in accordance with the prayer of the petition.

1. The first proposition of the appellants which calls for notice is that the plaintiff has an adequate remedy by an action of replevin, or for the conversion of the mortgaged property, hence the petition fails to state a cause for equitable interference. We think that the question of jurisdiction is not presented by the record as submitted to this court. Where courts, like ours, are clothed with both common law and equity powers, relief will not always be denied on the ground that the plaintiff has mistaken his remedy. The rule is that where the party, having the right to object, voluntarily submits to the jurisdiction of a court of equity, the cause will be retained for trial on its merits and the proper relief awarded. (*Bank of Utica v. City of Utica,* 4 Paige Ch. [N. Y.], 399; *Tenny v. State Bank,* 20 Wis., 164; *Savery v. Browning,* 18 Ia., 246; *Amis v. Myers,* 16 How. [U. S.], 493; *Niles v. Williams,* 24 Conn., 284; *Dearth v. Hide & Leather Nat. Bank,* 100 Mass., 541; Hawes, Jurisdiction, 66.) The exceptions to that rule are actions *ex delicto,* for damage only, or *ex contractu,* for debt on written instruments, and possibly others which need not be here enumerated, since it is evident that this is a case for the application of the general rule. It is true the question of jurisdiction is presented by the answer,

but it is clear that the objection on that ground was waived by the subsequent acts of the appellants.    From the transcript it appears that the petition was filed on the 11th day of October, 1890.    On the 24th day of the same month the order of reference was made, in which appellants were allowed ten days to answer.    Their answer was filed November 3, and the reply on November 10.    The hearing before the referee was commenced November 19, and his report filed December 15.    By the exceptions subsequently filed the report is assailed on the sole ground that the findings are not sustained by the proofs.    There was no ruling on the subject of jurisdiction; nor does it appear that the attention of the court was ever called to the fact that that question was put in issue by the pleadings.    The answer, which was in the nature of a demurrer, distinctly presented the question of the jurisdiction of the court, and appellants were entitled to a ruling thereon.    Assuming that the objection was well taken, it was their duty to move for judgment on the pleadings, or in some manner submit that question for determination by the court; but having elected to take the chances of a favorable determination of the cause on its merits, they will not now, after a protracted and costly trial, be heard to call in question the jurisdiction of the court.

2. It is argued that the mortgage is fraudulent as to creditors of Gaghagen, for the reason that there was no change of possession of the mortgaged property, but, on the other hand, the mortgagor continued in possession and carried on the business by buying and selling in the usual course of trade.    It is not seriously urged that the mortgage is fraudulent on its face, and it is clear that it is not, since there is no provision therein which can be construed as a power of sale by the mortgagor.    On the other hand, it is expressly stipulated that possession shall be immediately given to the mortgagee.    The principle which runs through all of the cases in this court is that where a mort-

gage is not fraudulent on its face, the question of fraud is one of fact for the jury, and that such instrument will not be declared void as to creditors unless the fraudulent intent is shared by both the mortgagor and mortgagee. (See *Hedman v. Anderson*, 6 Neb., 393; *Chicago Lumber Co. v. Fisher*, 18 Neb., 334; *Kay v. Noll*, 20 Neb., 380; *Davis v. Scott*, 22 Neb., 154.) The fact that the mortgagor of personal property of the character here involved is permitted to retain possession thereof and sell from the stock in the usual course of business raises a presumption of fraud as to creditors and casts upon the mortgagee the burden of proving good faith. But we have been referred to no case holding that the retention of possession and sale by the mortgagor will *per se* render void a mortgage which is not fraudulent on its face.

3. It is found by the referee (finding No. 24) that Sherwin, on September 22, 1890, took possession of the property in controversy by virtue of his mortgage, according to an agreement with Gaghagen, and also (finding No. 28) that J. H. Pinkerton was in possession of said property by virtue of the mortgage at the time of the levy thereon to satisfy the execution against Gaghagen. Whatever may be the rule elsewhere, it is settled in this state that fraud of the character here charged is available to those creditors only whose attachments or executions are levied before the delivery of possession to the mortgagee under the terms of the mortgage. (See *Fitzgerald v. Andrews*, 15 Neb., 52; *Kay v. Noll, supra.*) But it is contended that we should disregard the findings mentioned on the ground that they are against the clear weight of the evidence. Sherwin testifies that on the evening of the 22d he demanded possession under his mortgage, and that the property was at that time turned over to him by Gaghagen without objection, and that it was immediately placed in the custody of Pinkerton, in which he is fully corroborated by the latter. He is contradicted by Gaghagen, who is to some extent

corroborated by Quinby, a clerk in the store.   A finding for the appellee based upon such testimony will not be disturbed by this court on the ground that it is not in accordance with the weight of the evidence.   It is needless to cite authority for the rule which governs in such cases and which has been so often applied in this court.

4. Lastly, it is contended that the mortgage is void as to creditors of Gaghagen by reason of the disparity between the value of the property mortgaged and the amount of the debt secured thereby.   We might dismiss that claim with the remark that it does not appear to have been made either before the referee or the court on the motion for judgment on the findings.   The value of the property is not found, but assuming it to be $5,600, as claimed by appellants, the mortgage will not be declared void on that ground alone: First, because the case is still within the principle of *Fitzgerald v. Andrews* and *Kay v. Noll;* second, the debt secured is a part of the purchase price of the property mortgaged.   We are referred to no authority and can conceive of no principle which can be invoked to defeat as fraudulent a mortgage of chattels executed and received in good faith to secure the price thereof on the ground that the security is excessive.   *Morse v. Steinrod*, 29 Neb., 108, *Brown v. Work*, 30 Neb., 800, and *Thompson v. Richardson*, 33 Neb., 714, relied upon by appellants, do not conflict with this view.   The property in each of these cases was merchandise which had been sold and delivered in the usual course of trade on the credit of the mortgagor.   There is some reason for the contention that general creditors have rights in property of that character, and that as to them a so-called "blanket mortgage" is fraudulent and void.   But in this case the property was not sold on the credit of Gaghagen and did not, when the mortgage was executed, appear among the assets available for the satisfaction of his general creditors.   The reason for the rule stated in the cases named is therefore wanting.   But speaking for himself, the

writer understands those cases to hold merely that a mortgage upon property greatly exceeding in value the amount of the debt secured is evidence of fraud, which may be sufficient of itself to sustain a finding of actual fraud, and not that it will, as a matter of law, render the security void. Those cases, it is assumed, were rightly decided upon the facts; but the proposition that a mortgage is fraudulent *per se* because it covers property in excess of the debt secured cannot be sustained either upon reason or authority. We find no error in the record and the judgment of the district court is

AFFIRMED.

RYAN, C., took no part.