J. T. ROBINSON NOTION COMPANY, APPELLEE, V. JOHN B. FOOT ET AL., APPELLANTS.

FILED OCTOBER 3, 1894.   No. 5671.

1. **Fraudulent Conveyances:** PREFERRING CREDITORS. An intention to defraud ought not to be inferred from the mere fact that by pledging his personal property and mortgaging his real estate a debtor has given a preference to one or more of his creditors.

2. **Judicial Sales:** TITLE OF PURCHASER: FRAUD. A purchaser of real property at judicial sale, duly confirmed, takes a title which cannot be assailed because of fraud in a prior transfer of the decree under which such sale was had, provided the aforesaid judicial sale itself was in all respects free from fraud and collusion.

APPEAL from the district court of Saunders county. Heard below before BATES, J.

*H. Gilkeson* and *Frick, Dolezal & Stinson,* for appellants.

*Mahoney, Minahan & Smyth* and *Simpson & Sornborger, contra.*

RYAN, C.

This action, to subject certain real property situated in Saunders county to the payment of a judgment in its favor, was commenced by the J. T. Robinson Notion Company on March 16, 1891, against John B. Foot, its judgment debtor, and other parties joined as defendants. Of these parties, it was alleged that the Bank of North Bend fraudulently claimed to be the owner of said real property, while as to the other parties, M. E. Smith and W. V. Morse, it was charged, simply, that they had or claimed some interest in the premises as mortgagees. No averment was made by which, either directly or indirectly, it was sought to

impeach the *bona fides* of the mortgages held by Morse or Smith.  As against the Bank of North Bend, it was alleged that judgment was obtained by the J. T. Robinson Notion Company in January, A. D. 1891, against John B. Foot, in the district court of Dodge county, for the sum of $1,278; that execution thereon was duly issued, and returned "No property found whereon to levy," after which a transcript of the last named judgment was filed in the office of the clerk of the district court of Saunders county, which was followed by an execution from that office, returned as had been that preceding it; that about February 25, 1888, defendant Foot purchased from M. Dowling a certain note for $1,478.53, secured by mortgage on the premises now sought to be subjected to Foot's debt; that afterward, on September 24, 1888, defendant Foot, in a proceeding instituted for the foreclosure of said mortgage, obtained a decree for the sum of $1,546.29, drawing interest at the rate of ten per cent per annum; that on or about December 19, 1888, defendant Foot transferred all his interest in said decree to the Bank of North Bend.  The sole charges of fraud made in the petition were in this language: "The plaintiff further alleges that said transfer of said decree from said Foot to said bank was so conveyed as aforesaid fraudulently, without consideration, and for the express purpose of protecting the assets of said Foot against the just claims of the creditor of said Foot, and for the further purpose of hindering and delaying the plaintiff and other creditors of said Foot in collecting their just claims against said Foot.  Plaintiff further alleges that in pursuance of said fraudulent intent upon the part of said Foot and said bank, said bank did, on or about the 15th day of January, 1889, cause said premises hereinbefore described to be sold at sheriff's sale, and thereupon purchased said premises at said sale, and are now holding said premises under the sheriff's deed executed to said bank upon the confirmation of said sale;

and plaintiff further alleges that by taking said sheriff's deed said bank became the trustee of said Foot, and, as such, yet holds said premises." In the petition there was no averment as to when the indebtedness from Foot to the J. T. Robinson Notion Company originated. The existence of any indebtedness is first shown by pleading the judgment obtained in January, 1891. The transfer of the decree was in the petition asserted to have taken place on December 19, 1888,—a little more than two years before there was alleged to have been in existence any claim in favor of the notion company against Foot. It requires a very liberal resort to construction to supply the lacking averment from the general statements that the transfer of the decree was made "fraudulently, without consideration, and for the express purpose of protecting the assets of said Foot against the just claims of the creditor of said Foot, and for the further purpose of hindering and delaying the plaintiff and other creditors of said Foot in collecting their just claims against Foot." In a close case this might become very important. It is now mentioned because if this indebtedness from Foot to the notion company had its origin before the events transpired, of which complaint is made, the company has apparently slept on its rights for an unusual length of time before beginning this suit, in excuse of which no explanation has been offered. On the other hand, if this indebtedness arose after the transfer complained of, there is shown no reason justifying complaint by the notion company, for with fraudulent transfers anterior to the creation of an indebtedness to him the creditor ordinarily has no concern. These, however, are not the only difficulties to be overcome in sustaining the decree of the district court which granted the relief prayed. It was shown by the evidence that for a long time prior to December 18, 1888, the defendant Foot was carrying on the business of a general merchant at North Bend, the place of business of the bank; that

there were quite a number of claims owing by Foot,—that to the bank just named then being of the amount of $11,-045.50. At the date last named Mr. Foot failed in business, having on hand a stock of merchandise which invoiced about $16,000. He had also several pieces of incumbered real property, among which was that now sought to be subjected to the payment of the notion company's claim. To secure certain of the creditors, he gave chattel mortgages on his merchandise, as follows: To the appellant bank, one for $7,545.50; to May Brothers, one for $7,500, and one to Mr. Moone and Mr. Smith for about $2,300. As the goods mortgaged invoiced about $16,000, and the amounts secured by these mortgages amounted to $17,-345.50, fraud could not be implied as to this transaction because of these creditors taking an inordinate amount of security. There was, however, still unsecured to the bank of North Bend a balance of $3,545.50. As security for $1,900 of this balance, Foot gave the bank an assignment of his decree against the premises sought to be subjected in this action, and for the security of the remainder he mortgaged to the bank certain lands in Dodge, Platte, and Butler counties, subject to certain mortgages which were afterward foreclosed. The validity of the decree assigned by Foot to the bank was in no way assailed in the district court, and, hence, must conclusively be presumed to have been correct and just. The first lien established by it was for costs; second, the claims of D. C. Hall; third, the claim of John Beermaker; fourth, the amount due John B. Foot. The return of sale under this decree shows that the sale was for the sum of $1,250, on the bid of the Bank of North Bend. After satisfying costs, there were distributed the following amounts under the decree: To D. C. Hall, $1,064.50; to John Beermaker, $29.55; to John Foot, the balance, $63.55. Exclusive of costs, the amount actually paid by the bank to the sheriff was $1,094.05 on the 15th day of January, 1889, and during the month last named

this sale was duly confirmed, and presumably the amounts respectively due Hall and Beermaker were paid to them. There is no claim made that the sale was irregular, nor that the distribution to Hall and Beermaker was unauthorized; neither is their right to receive all that was paid them in any way questioned. After the bank's purchase, its title rested on the decree and sale. The transfer of the decree then became important only so far as it authorized payment of such part of the proceeds of the sale as Foot or his assignee might be entitled to receive from the proceeds of the sale pursuant thereto. It might be that upon proper averments, sustained by proofs, the notion company could show itself entitled to redeem by paying to the bank the amount by it paid over and distributed between Hall and Beermaker, with interest thereon; but this would involve a tender of the amounts last named. No such tender has been made; neither was this action one for redemption. An action to redeem was suggested as the proper proceeding under similar circumstances in *McKeighan v. Hopkins,* 14 Neb., 361, and it was therein said that a judicial sale could not be collaterally attacked except for fraud or collusion. Neither of these grounds were urged as against the validity of the decree or sale thereunder, and the notion company, therefore, was in no such situation that it should be permitted to maintain its action in the form in which it was instituted, especially in view of the fact that between the bank and Foot there was no evidence to justify a finding of the existence of the trust relation charged in its petition.

The evidence in this case has been carefully considered, and while there were circumstances which called for explanation, there was in each instance such an explanation as left no reason for suspecting the motives of any of the parties concerned. The district court seems, by the questions propounded to the cashier of the bank, to have been greatly influenced by the fact that at the time the transfer

of the decree was made the assignor thereof was insolvent, to the knowledge of the assignee. This circumstance alone would not be sufficient to justify the inference of fraud, for an insolvent debtor has the right, in good faith, to prefer one creditor to another. (*Jones v. Loree*, 37 Neb., 816.) The judgment of the district court is

REVERSED.