FARMERS STATE BANK OF LEXINGTON, APPELLANT, V. KATIE LEMMER, APPELLEE.

FILED JANUARY 15, 1936. No. 29426.

*Frank M. Johnson,* for appellant.

*W. A. Stewart, Jr., contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ.

PER CURIAM.

On April 4, 1934, the appellant commenced an action in the district court for Dawson county upon two promissory notes, executed by defendant. Both bore date of July 2, 1932; one for $3,000, with interest at 8 per cent. per annum from date, was due January 2, 1933; the other for $2,000, with interest at 8 per cent. per annum from date, matured December 2, 1932. On June 26, 1934, appellant caused an affidavit in attachment to be filed in this proceeding, accompanied by a proper and sufficient bond. The grounds for attachment set forth therein were "that the defendant is about to convert her property, or a part thereof, into money, for the purpose of placing it beyond the reach of her creditors; and has assigned, removed or disposed of, or

is about to dispose of her property, or a part thereof, with intent to defraud her creditors." On June 26, 1934, a writ of attachment was duly issued in this cause, and on June 27, 1934, sections 12 and 13, township 12; range 23, pursuant to the commands of the writ, were attached by the sheriff of Dawson county, and return made as required by law. On July 10, 1934, a motion to discharge this attachment was filed, stating "that the grounds of attachment set out in said affidavit are untrue; that the sheriff of Dawson county, Nebraska, has made an excessive levy in that the prayer in the plaintiff's petition asks for sum of $5,000, with interest at 8 per cent. from July 2, 1932, and the land levied upon and appraised shows a value of $13,000." On this date the defendant, Katie Lemmer, also filed an affidavit which set out that "affiant specifically denies she is about to convert her property, or a part thereof, into money for the purpose of placing it beyond the reach of her creditors; specifically denies that she has assigned, removed or disposed of, or is about to dispose of her property, or a part thereof, with intent to defraud her creditors."

On July 18, 1934, the defendant also filed an answer which was, in substance, an admission of the execution and delivery of the notes in suit, with a plea of "no consideration." On July 20, 1934, the motion to discharge the attachment was heard "upon the pleadings and the evidence," and, "upon consideration whereof, the court finds there is insufficient evidence to support the plaintiff's claim or cause, and that said attachment should be discharged," and judgment was thereupon entered that "said attachment * * * be and the same hereby is vacated and discharged."

From the order of the trial court overruling its motion for a new trial, the bank appeals.

The evidence upon which the cause was heard is preserved in a bill of exceptions. The defendant's affidavit traversing the statements of plaintiff's affidavit forms no part of the bill of exceptions. It appears only as a part of the transcript.

This court was early committed to the doctrine that,

"Attachment, though sometimes called an ancillary or auxiliary proceeding, is nevertheless, in all essential respects, a suit. The affidavit of a plaintiff made to obtain the writ of attachment, and the affidavit of a defendant, when made, denying the truth of the averments of the plaintiff, constitute the pleadings in the proceeding." *Jordan v. Dewey*, 40 Neb. 639, 59 N. W. 88.

Considered as a mere pleading, defendant's affidavit, on review in this court, not tendered and received as proof, may not be given evidential value.

So, also, we have repeatedly laid down the rule that affidavits used as evidence, or forming an essential part of the proof, may not be considered on appeal unless preserved in the bill of exceptions. *Banta v. McChesney*, 127 Neb. 764, 257 N. W. 68; *Schmidt v. Village of Papillion*, 92 Neb. 511, 138 N. W. 725; *Bartlett State Bank v. Johnston*, 110 Neb. 782, 195 N. W. 108; *Hannah v. American Live Stock Ins. Co.*, 111 Neb. 660, 197 N. W. 404; *Lee v. State*, 124 Neb. 165, 245 N. W. 445.

While the findings of the trial court may exclude consideration of this question on appeal, it appears to be the rule that, on a motion to discharge the attachment, the defendant cannot properly present the question of excessive levy as a cause for its total dissolution or discharge. 3 Standard Ency. of Procedure, 785.

In the consideration of this case, we do not have the benefit of brief or argument on behalf of the defendant. The evidence discloses, without dispute, that at the time of the institution of these proceedings the defendant, Katie Lemmer, was the owner of the following property: Four sections of "hill land," of which one section was encumbered by a mortgage of $7,000 and accrued interest thereon, with unpaid taxes; one section encumbered by a mortgage of $4,000, accrued interest and unpaid taxes thereon; two sections without mortgage, but subject to delinquent taxes in the sums of $736.37 and $621.99, respectively. She also owned a house in town, in which she lived, mortgaged to the extent of $1,500, on which there was two years' interest

accrued and unpaid, and two years' taxes delinquent.. With the exception of household goods, these four sections of land and the dwelling-house constitute defendant's entire possessions. She testified she has no money. .

Plaintiff's testimony is to the effect that, after the commencement of this action in April, 1934, an attempt was made on behalf of defendant, in which she was represented by her attorney of record in this case, to procure a sale of her unencumbered land for cash, and negotiations for this purpose were had with Ed Kreitz. An offer to purchase upon terms other than cash was unconditionally refused and payment of cash was insisted upon. These negotiations thereafter had proceeded to a point where it was agreed that if Kreitz could raise $10,000 the two unencumbered sections would be sold to him for that price. The representative of the defendant thereupon insisted that the examination of the abstract of title, preliminary to closing up the deal, should be made by some attorney other than the attorney representing plaintiff bank in the pending suit; and when it was suggested by Kreitz that he would secure a part of the consideration by securing a Federal Land Bank loan, it was objected to by Mrs. Lemmer's representative for the reason that, due to the connection of Mr. Roberts (an executive officer of plaintiff bank) with the federal institution, this application for a loan would come to the latter's notice, and thus plaintiff would be advised of the pending negotiations.

Kreitz testifies on this matter, in part, as follows: "A. He (Mrs. Lemmer's attorney) made the statement, there was a suit pending, and he said not—I suggested to get the money from the Federal Land Bank, with Mr. Roberts. He said not to do that; I didn't know about this suit pending at that time. He said not to see Mr. Roberts about it or you, as you were handling the case; that was the first time I knew you were in it. Q. What did he say, if anything, about Mr. Roberts? A. He said it was the Farmers State Bank that had charge of the—had the suit pending, and not to get it through that bank, it would probably create a

disturbance. Q. In getting the loan through Mr. Roberts or the Federal Land Bank? A. Yes, sir. Q. Because the Farmers State Bank was a plaintiff in this action? A. Yes, sir."

Later Joe Lemmer, defendant's son, made an application to secure a loan of $5,000 in his mother's behalf. As part of the application he orally stipulated that he would furnish an abstract showing good title and have it examined and approved by an attorney selected by himself, at his own expense. This application was pending at the time of the trial of the attachment proceeding in the trial court, and held up pending the disposition of the case to be made by the trial court. Mrs. Lemmer, appearing as a witness, testified that she knew nothing about the attempted sale of the land to Mr. Kreitz, but admitted she would sell any of the land if she got a good offer for it; admitted that she knew her son Joe was attempting to secure the loan of $5,000; and stated that out of the proceeds of this loan as made she expected to pay interest and back taxes, the amount she owed to her son Joe, and provide for the relief of another son. The amount of the indebtedness due her son Joe is not stated, and the particulars as to its creation are omitted; the amount proposed for relief of the other son does not appear. In this connection it may be conceded that at common law a debtor may prefer certain of his creditors. Further, an intention to defraud may not be justly inferred from the due exercise of this right or the declared intention so to do. *Farwell Co. v. Wright,* 38 Neb. 445, 56 N. W. 984; *Robinson Notion Co. v. Foot,* 42 Neb. 156, 60 N. W. 316.

Nevertheless, this court, in the case of *Morse v. Steinrod,* 29 Neb. 108, 46 N. W. 922, announced the rule: "The common-law right of a debtor to prefer creditors is very much restricted in this state by virtue of the attachment, assignment, and other laws, and will not be applied in any case where a just and fair distribution of the proceeds of the debtor's property can be made among all his creditors."

While this principle so announced was referred to and discussed in *Jones v. Loree,* 37 Neb. 816, 56 N. W. 390, it

was not there repudiated or overruled, nor has its application since been expressly limited by any of our decisions.

Indeed, without reference to the cases last referred to, the proposed transactions contemplated by defendant, being with, or for the benefit of, her sons, and necessarily having the effect of hindering, delaying, or defrauding her existing creditors, of which class the plaintiff bank was one, she, in this proceeding, must carry the burden of showing by satisfactory evidence the *bona fides* of the transaction in view of all the attendant circumstances. This has not been done. *Bartlett v. Cheesbrough*, 23 Neb. 767, 37 N. W. 652; *Ayers v. Wolcott*, 66 Neb. 712, 92 N. W. 1036; *Kirchman v. Kratky*, 51 Neb. 191, 70 N. W. 916.

In consideration of all the evidence before us, we are unanimously of the opinion that the district court erred in sustaining the defendant's motion to dissolve the attachment in the instant case.

The judgment of the trial court is, therefore, reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.