ELLIS L. BIERBOWER, PLAINTIFF IN ERROR, V. ANNA POLK, DEFENDANT IN ERROR.

1. **Assignment:** PREFERRING CREDITORS. The act of the legislature of 1877 relating to voluntary assignments, Compiled Statutes, 1881, Chap. 6, did not prevent a debtor in failing circumstances from preferring a creditor by a separate and independent conveyance unconnected with the transaction of making an assignment.

Bierbower v. Polk.

2. ——: ——: CHATTEL MORTGAGE. When a debtor executed a chattel mortgage to secure the payment of a *bona fide* pre-existing debt, and soon thereafter executed a general assignment of his property for the benefit of his creditors, but which assignment was abandoned by the assignee and all parties interested, and the mortgaged property taken possession of by the mortgagee, the mortgage will be upheld even though it was executed on the same day and near the same time at which the assignment was executed.

3. ——: VERDICT: SPECIAL VERDICT: EFFECT. When the general and special verdicts of a jury are consistent with each other and are supported by sufficient evidence, the special verdict will be treated as final upon all questions directly passed upon by such verdict.

4. Evidence: CROSS-EXAMINATION: RE-EXAMINATION. When a witness was called to testify as to the value of a stock of goods which he had been called to appraise, and when the value as given by him in his testimony exceeded the value as ascertained by the appraisement, and upon cross-examination it was shown that he was present at a sale afterwards made, and for the purpose of showing that his valuation of the whole stock was wrong, it was sought to be shown by him that the goods were well sold, that he made purchases at such sale, and the whole proceeds were much less than the valuation fixed by him, it was not error for the court to permit the witness to testify on re-examination as to what goods he and others bought, what they paid, and what was their value, for the purpose of showing the correctness of the estimate of value as testified to in his examination-in-chief.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Lamb, Ricketts & Wilson,* for plaintiff in error.

*Harwood, Ames & Kelly,* for defendant in error.

REESE, J.

This action was brought in the district court by defendant in error against plaintiff in error for the value of a stock of goods which, it is alleged, was the property of de-

fendant in error (plaintiff below), and which she alleges was converted by plaintiff in error.

Plaintiff in error answered setting up four defenses, which may be summarized as follows: 1st. A general denial. 2d. That at the time of the alleged conversion he was the United States marshal for the district of Nebraska, and that the goods in question were seized by him by virtue of a certain order of attachment issued out of the circuit court of the United States for the district of Nebraska against one C. W. Chambers, who was the owner thereof, and that they were afterwards sold by him under an order of sale duly issued out of said court. That the title of defendant in error to said goods is by virtue of a pretended chattel mortgage made by said Chambers to defendant in error on the 19th day of February, 1883. That prior to the 1st day of September, 1882, defendant in error and said Chambers were doing business in Lincoln as partners, under the firm name of C. W. Chambers and Co., and that Chambers was the managing partner in said firm. That at that time said firm or partnership was dissolved, and Chambers continued in the business, giving to defendant in error his promissory notes for a large amount and running for a long time, with the secret and fraudulent understanding and agreement that in case he should become embarrassed, financially, he should give her security in preference to others to whom he might become indebted. That said dissolution and agreement were secretly and fraudulently made without the knowledge or consent of the creditors of said firm, and with the understanding that Chambers would buy goods on credit there r, his credit and standing in financial circles having been made good by his association with defendant in error, who was a near relative of his and of reputed wealth. That on the said 19th day of February, 1883, the said Chambers having become insolvent, and being then about to fail in business, without the knowledge or consent of defendant in error, executed to her the chat-

Bierbower v. Polk.

tel mortgage in question to secure the notes remaining unpaid, amounting to the sum of $4,283.18, and caused the same to be filed in the office of the county clerk of Lancaster county, and at the same time and as a part of the same transaction he secretly and fraudulently executed to one C. T. Boggs a pretended general assignment of all his property for the benefit of his creditors. That said mortgage and the said assignment were in law one and the same instrument, both made in pursuance of the same purpose and design—that of hindering and defrauding the creditors of said Chambers. That Boggs, under the advice and counsel of said Chambers and his attorneys, and for the purpose of carrying out the fraudulent design and purpose of Chambers, pretended to accept the trust imposed by said assignment, took possession of said store, closed the doors, placed a placard in the window to the effect that he held possession under the assignment, and so continued to hold possession until near the close of the thirty days in which he was allowed by law to file the assignment with the clerk, execute the necessary bond, and file his inventory, but that instead of so doing, and in pursuance of the general plan, he secretly yielded the possession of the store to the defendant in error, who then took possession claiming to hold under her mortgage, and refused to file the assignment or qualify as assignee, and that nothing further was done under the pretended assignment. That the pretended assignment and the pretended chattel mortgage were but part of one and the same transaction, and were made for the sole purpose of hindering, delaying, and defrauding the creditors of Chambers. That the assignment and mortgage were both fraudulent and absolutely void, and that the pretended possession of defendant in error of said goods was only the possession of Chambers under the fraudulent design set forth in the answer. 3d. That in case said mortgage should be held to be valid, the defendant in error should be required to account for certain goods of the value

of $1,500, seized and appropriated by her out of said stock of goods, and for the sum of $1,500 in money of said Chambers collected by her, and that said sum of $3,000 should be credited on said notes and go to discharge and reduce the lien of the mortgage if any there be.    4th. That there were tax liens on said goods at the time of the levy, to the extent of $110, which reduced their value to that extent.

The reply of defendant in error admits the alleged co-partnership, the dissolution thereof in August, 1882, the sale of the interest of defendant in error to Chambers for the amount alleged by plaintiff in error, and the execution of the notes therefor; that at the time of the sale it was agreed that if at any time the interest of defendant in error should require it, Chambers should pay or secure said notes and should in case of the absence of defendant in error employ counsel for her to represent her in taking such security or payment; that from August 26th, 1882, to February 19th, 1883, Chambers conducted the business in his own name as sole proprietor; that Gage & Co. (mentioned in the answer) commenced and prosecuted the attachment proceedings, caused the seizure and sale of the goods as alleged, and that they, at the time of such seizure, were in the possession of defendant in error under the mortgage; that the mortgage was executed on the day alleged by plaintiff in error, and that on the same day, after the execution and delivery thereof, Chambers executed a general assignment for the benefit of creditors, in which Boggs was named as assignee; that the attorneys under whose direction the mortgage was made, as the agents and attorneys of defendant in error, were retained for her by Chambers, pursuant to his previous agreement to do so; that at the time of the execution of the mortgage defendant in error was temporarily absent from the state and that the assignment was never filed for record; that on the day of the execution and delivery of the assignment to Boggs he posted a notice on the store door that the store was closed under the assignment,

and that before the expiration of thirty days from the date of the assignment defendant in error took possession of the store and goods under her mortgage, and that her sole claim or title to the property is the mortgage and posses- sion thereunder.   All other allegations of the answer are denied.

The cause was tried to a jury who returned a verdict in favor of defendant in error for the sum of $3,245.00. The jury also, under the direction of the court, at the re- quest of plaintiff in error, returned a special verdict as follows :

1.  " Was C. W. Chambers insolvent on the 19th day of February, 1883, the date of the mortgage and assign- ment? "   Answer.   " We cannot say."

2.  " Had Chambers determined on that day, prior to the making of the mortgage in question, to make a gene- ral assignment of his property for the benefit of his cred- itors? "   Answer.   " No."

3.  " Had Chambers selected his proposed assignee prior to the time of the execution of the mortgage in question ? "   Answer.   " No."

4.  " Was the mortgage and assignment executed at or about the same time by Chambers ? "   Answer.   " Nearly the same time."

5.  " Were the two instruments executed by Chambers for the purpose of transferring all his property for the benefit of his creditors? "   Answer.   " The mortgage to secure Mrs. Anna Polk, the assignment to secure the bal- ance of creditors as far as possible."

6.  " Was the mortgage in question executed by Cham- bers at or about the time he executed the assignment for the purpose of giving a preference to the plaintiff, Mrs. Polk ? "   Answer.   " The mortgage was executed inde- pendent of the assignment to secure the plaintiff's (Mrs. A. Polk) claim."

7.  " Was the assignment delivered to Boggs, and did

he take possession of the goods as assigned before the plaintiff had notice of the making of the mortgage?" Answer. " No; plaintiff had notice through her counsel."

8. " Were the mortgage and assignment both drawn by the same firm of attorneys under the same retainer and employment by Chambers?" Answer. " By the same firm, but not under same retainer and employment."

9. " Was the receipt of the telegram by the plaintiff in the state of Mississippi on the 20th day of February, 1883, the first notice the plaintiff had of the execution of the mortgage in question?" Answer. " Personally, yes; but her counsel had been notified previously."

A motion for a new trial was made by plaintiff in error, which was overruled, and a judgment was rendered on the general verdict in favor of defendant in error. The proper exceptions having been entered, the plaintiff in error brings the case into this court upon error for review. The points relied upon by plaintiff in error will be discussed in the order in which they occur in his very excellent brief.

The first question presented is, that the court erred in overruling the motion of plaintiff in error for a new trial, and in this connection it is said " that the verdict is contrary to the instructions of the court and unsupported by any evidence in the case upon the essential and material points, that the assignment and chattel mortgage constituted in law, under the undisputed facts proven, one and the same instrument—an assignment by an insolvent debtor."

If we properly understand the position of counsel for plaintiff in error in treating of this phase of the case, aside from any question of actual or intentional fraud, it is that in law the assignment and mortgage must be treated as one instrument, the making of both the same transaction. That the position of defendant in error must be the same as it would have been had the preference been given her debt in the body of the general assignment. This being

the case, the abandonment of the assignment by all parties, which in effect rendered it ineffectual and void, is likewise an abandonment of the mortgage. Or, in other words, the going down of the assignment carried with it all its parts, of which the mortgage was one, and therefore both the assignment and mortgage should be treated as if never made. Assuming the premises to be correct, the conclusion would perhaps follow. The question of the validity of the mortgage is one consisting of law and fact. If the mortgage is so connected with the assignment as to become in law a part of the transaction, and does not extend to a distinct special transfer of property in payment or security of some particular debt, it must be held to be a part of the assignment. Burrill on Assignments, § 167. Otherwise not. The special finding of the jury being, as we think, supported by the evidence, should, in our opinion, be taken as final so far as it goes. Grouping the several interrogatories and answers of this special verdict together it is found that Chambers had not, prior to the making of the mortgage, determined to make the general assignment. That he had not selected the assignee. That the mortgage was made independent of the assignment and for the purpose of securing defendant in error, while the assignment was to secure other creditors as far as possible. The testimony shows beyond any doubt that the indebtedness to defendant in error was *bona fide.* That the mortgage was executed and delivered before any mention of the assignment was made to the agents and attorneys of defendant in error. That the mortgage was accepted and ratified by her as soon as informed of its execution, and that she took possession of the goods, advertised them, and began the sale before they were seized by plaintiff in error. No proof of the alleged conspiracy is made. No instructions were given the assignee by the attorneys for defendant in error. Nor is anything proven which tends to show that the assignee sought to consult

the wishes or inclinations of Chambers. The attorneys consulted by him were those of other creditors, and when told by them that the mortgagee was entitled to the possession of the goods, and when he ascertained that the acceptance of and carrying out the trust imposed by the assignment would be productive of expense and trouble with no adequate returns to him or the creditors, he simply declined to qualify or proceed further. The mortgagee was in possession of the mortgaged property, and her right thereto was unimpeachable.

In *Nelson v. Gary*, 15 Neb., 531, it was decided by this court that the act of 1877 does not prevent a debtor, though in failing circumstances, from preferring a creditor by a separate and independent conveyance, unconnected with the transaction of making the assignment, and the fact that such preference was made the same day of the execution of the assignment, if done without fraudulent intent, would not render it a part of the assignment, so as to convey the mortgaged property in trust for creditor.

It can serve no good purpose to review all the testimony upon the point here discussed. It can be briefly and fairly stated by saying that in the forenoon of the day on which the instruments were made, Chambers met Mr. Harwood at the capitol in Lincoln, stated to him that some of his creditors were pressing him, and that he desired to secure defendant in error; that she had requested him to employ counsel if necessary, and secure the claim; and he wanted to know of Mr. Harwood how it could be done. Mr. Harwood told him the best way would be to make a mortgage. After some further conversation they separated, Mr. Harwood saying he or his partner, Mr. Ames, would be at the office about noon, or soon thereafter. Mr. Harwood saw Mr. Ames soon after, and stated to him that one of them would have to go to the office for the purpose named. Harwood soon after went to the office. No one was there, but Chambers soon afterward came in and desired the mortgage

made. The notes, the payment of which was to be secured, were at a bank in the city. Harwood requested Chambers to go for them, which he did. The mortgage was prepared and signed, but not acknowledged—and taken possession of by Harwood, and afterwards, perhaps, acknowledged. Mr. Ames came in and soon asked Chambers if he wanted a mortgage made, when he was informed by Harwood that the mortgage had been written. Chambers then said he wanted an assignment drawn too. Harwood expressed surprise and asked him what he wanted an assignment for. Mr. Ames asked him if he had any property left to assign, and he said he had—that his store inventoried $8,500 in January. Mr. Ames got some paper and began writing the assignment, and Mr. Harwood had the mortgage acknowledged and went out, taking it to the office of the county clerk and causing it to be filed. During the afternoon the assignment was prepared and delivered to Mr. Boggs, the assignee. Mr. Harwood caused a telegram to be sent to defendant in error, at Vicksburg, notifying her of what he had done. The testimony wholly fails to show any connection between the execution of the mortgage and assignment, except that they were prepared by different members of the same firm of attorneys, and at nearly the same time. Harwood and Ames, at the time of accepting the mortgage, knew nothing of any purpose on the part of Chambers, if any existed, to make an assignment. The jury were justified in returning the answer to the eighth interrogatory, that the mortgage and assignment were made "by the same firm, but not under the same retainer or employment." The matter of the assignment had been mentioned between Chambers and Boggs but no definite or final arrangement had been made. We think the mortgage should stand; especially so, since the contest is between the mortgagee and another creditor, who seeks the same preference, and not between the mortgagee and the assignee. *Dodd v. Hills*, 21 Kas., 707. *Farwell v. Jones*, 19 N. W. Rep., 241.

It is contended that the court erred in modifying certain instructions to the jury asked by plaintiff in error, and in giving certain instructions asked by defendant in error, and in refusing to give certain instructions asked by plaintiff in error. But we think the foregoing disposes of all the questions presented by these alleged errors, and nothing could be gained by any extended discussion of them here.

The position assumed by plaintiff in error as to the construction of the pleadings is not tenable. While it may or may not be true that the petition of defendant in error, standing alone, would not authorize her recovery by proving the execution and delivery of the mortgage, followed by her possession of the mortgaged property (which it is not necessary here to decide), it is quite clear that under the issues presented by the answer and reply, by which it was alleged on the part of plaintiff in error, and admitted by defendant in error, that her sole claim grew out of the mortgage and her possession, and with reference to which the cause was tried, the case was properly presented to the ury and the court did not err in refusing to instruct the jury that they must find for plaintiff in error because the proofs did not sustain the allegations of the petition. We will not try to harmonize the general denial with the other allegations of the answer, but will only say that it must be quite difficult to deny a proposition and admit its truth in the same verified pleading. The denial must yield to the admission.

Many exceptions to the ruling of the trial court in the admission and rejection of testimony were taken on the trial, and they are here presented for review. Some of them were evidently taken for prudential reasons and from motives of caution, and will not be here noticed. Others will be noticed briefly.

It is contended that the court erred in excluding certain testimony offered by plaintiff in error for the purpose of showing that defendant in error had, by legal process, re-

taken a part of the goods described in the petition, and that they were then in her possession. In this the court did not err. It is not necessary for us to enquire whether or not there was any merit in the proposed testimony. It is enough to say that no such issue was tendered by the pleadings. Upon the contrary, the plaintiff in error, by his answer, specifically admits the seizure and sale of the goods described in the petition.

It is next contended that the court erred in overruling the objection of plaintiff in error to certain testimony given by the witness Oppenheimer tending to show that the property sold by plaintiff in error did not sell for its value. The witness was introduced by defendant in error for the purpose of proving by him the actual value of the goods when seized by plaintiff in error, he having been one of the appraisers called by him. The examination-in-chief was directed to that point, and of which no complaint is made. Upon the cross-examination plaintiff in error sought to prove by the witness that he was present at the sale and that the property was well sold, that they brought more than the appraised value, that some of them were bought by the witness, and that the proceeds were near $2,200. Upon re-examination, the witness was asked what articles he bought, what he paid, and what the goods bought were worth. This testimony, in view of the cross-examination, was competent. The evident purpose of the cross-examination was to show that the estimate of the witness as to the value of the goods was too high; that they were well sold, and only brought about one-half the estimate of their value by him.

While the application of the whole testimony was somewhat remote, yet it tended in some degree to aid the jury in arriving at the degree of weight to which the testimony of the witness was entitled when giving his general estimate of the value of the whole stock. Had this inquiry not been entered upon by plaintiff in error there would have been no occasion for it by the other party.

From a careful review of the whole case we are satisfied that the mortgage was made in good faith, to secure a *bona fide* pre-existing debt; that it was independent of, and constituted no part of the general assignment; that possession of the mortgaged property was taken by the mortgagee before the seizure by plaintiff in error, and that he had full notice of all her rights; that his seizure was wrongful; that the verdict and judgment were correct, and that no such errors occurred upon the trial as will call for a reversal of the judgment.

The judgment of the district court is therefore affirmed.

. JUDGMENT AFFIRMED.

THE other judges concur.