GEORGE W. LININGER ET AL., PLAINTIFFS IN ERROR,
v. NATHANIEL HERRON, SHERIFF, DEFENDANT IN
ERROR.

1. Assignment: SALE: FRAUD. The mere sale by a party of a
stock of goods to a relative is not of itself a badge of fraud.
While a transfer of a stock of goods by a debtor in failing cir-
cumstances to his mother and brother is attended with suspi-
cion, from the facility with which a secret trust in favor of the
debtor may be created, yet where it is clear that such transfer
was made in good faith, upon a sufficient consideration, and not
to hinder or defraud creditors, it will be sustained.

2. ———: SALE TO RELATIVE OF ASSIGNOR. Where a bill of sale
of a stock of goods was made to the mother and brother of the
debtor to pay debts owing by him to them, *Held*, That as
against other creditors the grantees acquired only the right to
have a sufficient amount of the goods sold to satisfy their
claims, and the balance was a trust fund for the benefit of other
creditors, and the grantees must account.

ERROR to the district court for Gage county. Tried be-
low before BROADY, J.

*L. W. Colby* and *Hazlett & Bates*, for plaintiffs in error.

*L. M. Pemberton, T. D. Cobbey*, and *Burke & Prout*,
for defendant in error.

MAXWELL, J.

In October, 1882, one J. B. Lininger, a son of Elizabeth
Lininger and brother of George W. Lininger, the plain-
tiffs, was doing business at Wymore, in this state, and be-
ing in pressing need of money borrowed about $3,000
from George, giving his note therefor payable in 90 days.
To secure this note J. B. executed to his brother a chattel
mortgage on his stock of goods at Wymore. This mort-
gage was not filed for record until the 5th day of February,

1883. Prior to February 1st, 1883, J. B. Lininger had borrowed from his mother the sum of $1,800, upon which he was paying interest. Of this sum $800 had been in his possession for several years while $1,000 was a later loan. On the 1st day of February, 1883, J. B. Lininger executed to his mother a chattel mortgage upon his stock of goods to secure the sum of $1,800. This mortgage was filed for record on the 5th day of February, 1883. On the 7th of February, 1883, J. B. Lininger executed a bill of sale to the plaintiffs of all the goods, merchandise, fixtures, and chattels mentioned in the schedule which was attached to the bill of sale, the consideration expressed in the bill of sale being the sum of $5,000.

The plaintiffs by their agents then took possession of the store and goods and began selling the same in payment of the debts due the plaintiffs. Soon after this transfer the defendant, as sheriff of Gage county, levied a number of attachments, in the aggregate about $3,000, in favor of creditors of J. B. Lininger, on the goods in question. The plaintiffs thereupon brought an action of replevin and re-covered the possession of the property. On the trial of the action in replevin the court found the issues in favor of the defendant and that he had a lien by virtue of the attachment upon the property in question in the sum of $3,385.38.

The principal error relied upon is, that the judgment is against the weight of evidence. There is no claim that the attaching creditors were induced to give J. B. Lininger credit upon the faith of his ownership of the property covered by the mortgage to George W. Lininger, and that if said mortgage had been filed for record they would not have given or extended credit to J. B. Lininger. This plea, in any event, would be available only to subsequent creditors who trusted him on the faith of the property in his possession. But that question does not arise in this case. Nor does the question of the validity of the chattel

mortgages arise, as they were canceled and the goods de-
livered to the plaintiffs before the levies under the attach-
ments were made, and they are to be considered only for
the purpose of showing the nature of the transaction. The
only questions that properly arise in the case are, 1st,.
Whether or not the plaintiffs were *bona fide* creditors of J.
B. Lininger; and 2d, Was the property transferred to
them to hinder or defraud the creditors of J. B. Lininger?

Upon the first point it is sufficient to say that all the
testimony tends to show that plaintiffs actually loaned to
J. B. Lininger in the aggregate the sum of $4,800. All
but about $400 of this sum was in cash, and none of it on
the 7th day of February, 1883, had been repaid. The
checks of G. W. Lininger on the Omaha National Bank
in favor of J. B. Lininger for about $2,600, and in favor
of Lininger & Metcalf for about $400 on a debt of J. B.,.
due to them, are in the record. It also appears that at that
time J. B. represented to his brother that his stock would
invoice $12,000 or $15,000. The actual invoice of the
stock taken about February 1st, 1883, was $9,663.00 with
notes and accounts to the amount of $1,700, and as there
seems to have been no considerable purchase of stock after
the date of this transaction it is apparent that the represen-
tations were substantially correct. The amount of the
debt to the mother is in effect admitted, and is clearly es-
tablished by the proof, so that there  is a sufficient con-
sideration for the purchase.

2d. The mere sale by a party of his stock of goods to
a relative is not a badge of fraud. *Copis v. Middleton,* 2
Madd., 410. *Wrightman v. Hart,* 37 Ill., 123. *Dunlap
v. Bournonville,* 26 Penn. St., 72. *Kane v. Drake,* 27
Ind., 29. *King v. Russell,* 40 Tex., 124. If such sales
were fraudulent *per se* it would be impossible for family
connections to aid each other in case of financial embarrass-
ment without danger of being placed in a false position
and losing the entire sum loaned. Such a rule if adopted

could not fail to be productive of great hardship and injustice, and has nowhere, so far as the writer is advised, been accepted as the law. But where a debtor makes a transfer of his property to a relative for the purpose of paying or securing a debt alleged to be due such relative, the presumption of fraud is strengthened, for the reason that the transaction is between persons with whom a secret trust is most likely to exist. *Hanford v. Artcher*, 4 Hill, 271. *Bumpus v. Dotson*, 7 Hump., 310. Yet where the proof shows that there was necessity for, or reasonable fitness and propriety in making the transfer—in other words that it was made in good faith upon an adequate consideration—the presumption of secret trust and intent to defraud will ordinarily be overcome. Each case must depend upon its own circumstances, and fraudulent intent being a question of fact, if it should be made to appear from the evidence that the object of a transfer of property was not to hinder or defraud creditors, it should be sustained. All the evidence in this case shows that the object of the transfer of the goods in question was to secure the debts owing the plaintiffs, and in such case the transaction will be sustained. *Lorton v. Fowler*, *ante* p. 224. *Polk v. Bierbower*, 17 Neb., 268. There is testimony in the record tending to show that the value of the goods did not exceed the sum of $5,000 when the transfer was made. The invoice, however, shows the value to have been nearly twice that sum. This property was a trust fund for the payment of the debts of J. B. Lininger, and he could not as against creditors transfer a greater amount to the plaintiffs than sufficient to pay their claims. As to any excess, they hold the same as trustees for the benefit of creditors of J. B. Lininger.

While the plaintiffs have a claim upon these goods for the amount of their debts, other creditors also have rights in the premises that must be protected. It is evident that the value of the goods is nearly sufficient to pay all claims of

both the plaintiffs, and those in the hands of the defendant. As the plaintiffs by virtue of the bill of sale and possession have a prior lien on the goods to the attachment liens, their claims must be first satisfied, the remainder going to the defendant. The judgment of the district court is reversed and the cause remanded for further proceedings, the plaintiffs being required to account for the goods disposed of by them under the bill of sale.

JUDGMENT ACCORDINGLY.

THE other judges concur.