T. A. SHAW & COMPANY v. ROBINSON & STOKES COM-
PANY ET AL.

FILED JANUARY 19, 1897.   No. 6997.

1. Corporations: INSOLVENCY: PREFERRING CREDITORS. There is no
inflexible rule in existence which, under all conditions, prevents
an insolvent corporation from transferring or incumbering its
property in good faith and for proper purposes.

2. ——: ——: ——. Whether or not an insolvent corporation has
made a disposition of its property in fraud of the rights of its
creditors cannot be determined as a question of law, but, as a
question of fact, must be determined upon consideration of the
evidence in each particular case.

ERROR from the district court of Douglas county.
Tried below before FERGUSON, J.   Affirmed.

The facts are stated by the commissioner.

*Duffie & Van Dusen*, for plaintiff in error:

The assignments made and the attachment suits com-
menced by the assignees and levied upon the property
of the company, followed by placing the company in the
hands of a receiver upon its own application, constituted
a general assignment for the benefit of the creditors.   It
was one transaction in the eyes of the law, and the com-
pany having attempted to prefer certain creditors, the
assignment is void. (*Burrows v. Lehndorff*, 8 Ia., 96; *Van
Patten v. Burr*, 52 Ia., 518; *Perry v. Holden*, 22 Pick. [Mass.],
269; *Kellogg v. Root*, 23 Fed. Rep., 525; *Berry v. Cutts*, 42
Me., 445; *Doggett v. Herman*, 5 McCrary [U. S.], 269.)

The directors of an insolvent corporation are trustees
for the creditors. (*Bliss v. Matteson*, 45 N. Y., 22; *Butts
v. Wood*, 37 N. Y., 317; *Robinson v. Smith*, 3 Paige Ch.
[N. Y.], 222; *Aberdeen R. Co. v. Blaike*, 1 McQueen [Scotch],
461; *Horbach v. Marsh*, 37 Neb., 22; *Bradley v. Farwell*, 1
Holmes [U. S.], 433.)

The directors of an insolvent corporation cannot give

preference to one of its creditors over another. (*Wood v. Dummer*, 3 Mason [U. S.], 308; *Rouse v. Merchants Nat. Bank*, 46 O. St., 493; *Beach v. Miller*, 130 Ill., 162; *Drury v. Cross*, 7 Wall. [U. S.], 299; *Curran v. State*, 15 How. [U. S.], 307; *Richards v. New Hampshire Ins. Co.*, 43 N. H., 263; *Haywood v. Lincoln Lumber Co.*, 64 Wis., 639; *Port v. Russell*, 36 Ind., 60; *Lippincott v. Shaw Carriage Co.*, 21 Fed. Rep., 577; *Martin v. Zellerbach*, 38 Cal., 300; *Holder v. Lafayette, B. & M. R. Co.*, 71 Ill., 106; *Pyles v. Riverside Furniture Co.*, 30 W. Va., 134; *Lamb v. Laughlin*, 25 W. Va., 300; *Burr v. McDonald*, 3 Gratt. [Va.], 206; *Briggs v. Penniman*, 8 Cow. [N. Y.], 390; *Carey v. Cincinnati & C. R. Co.*, 5 Ia., 357; *Philips v. Whickham*, 1 Paige Ch. [N. Y.], 595; *Bank of Poughkeepsie v. Ibbotsen*, 24 Wend. [N. Y.], 478; *Moore v. Whitcomb*, 48 Mo., 543; *State Savings Ass'n v. Kellogg*, 52 Mo., 588.)

The fact that the company is an Iowa corporation gives it no additional right to prefer creditors. (*Guillander v. Howell*, 35 N. Y., 657; *Delahaye v. Heitkemper*, 16 Neb., 475; *Ford v. Plankinton Bank*, 58 N. W. Rep. [Wis.], 766; *Conover v. Hull*, 10 Wash., 673; *Orr v. Thompson*, 35 S. W. Rep. [Tex.], 473; *Lyons v. Perry*, 27 S. W. Rep. [Tex.], 100.)

References as to rights which plaintiff in error acquired by garnishment: *Brooks v. Greathead*, 1 J. & W. [Eng.], 176; *Angel v. Smith*, 9 Ves. [Eng.], 335; *Vermont & C. R. Co. v. Vermont Central R. Co.*, 46 Vt., 798; *Riggs v. Whitney*, 15 Abb. Pr. [N. Y.], 390; *In re Day*, 34 Wis., 643; *Brown v. Rauch*, 1 Wash., 497; *Moore v. Mercer Wire Co.*, 15 Atl. Rep. [N. J.], 737; *Reed v. Richmond & A. R. Co.*, 4 S. E. Rep. [Va.], 587; *Lyman v. Central V. R. Co.*, 10 Atl. Rep. [Vt.], 346; *Jones v. Browse*, 9 S. E. Rep. [W. Va.], 873; *Melendy v. Barbour*, 78 Va., 544; *Conwell v. Lowrance*, 26 Pac. Rep. [Kan.], 462; *Webster v. Lawrence*, 47 Hun [N. Y.], 565; *Adams v. Woods*, 8 Cal., 153, 9 Cal., 24; *Meara v. Holbrook*, 20 O. St., 143; *Hawkins v. Gathercole*, 1 Drew. [Eng.], 17; *Randfield v. Randfield*, 4 Drew. [Eng.], 314; *Adams v. Hackett*, 7 Cal., 187.

*Winfield S. Strawn*, appearing by permission of the court and courtesy of counsel in the case, argued the following propositions:

An insolvent corporation cannot prefer a creditor or creditors. Such a preference by an insolvent corporation is a use of its property for a purpose other than "to accomplish the legitimate object of its creation." (Compiled Statutes, ch. 16, sec. 55, ch. 15, sec. 1; *Graham v. La Crosse & M. R. Co.*, 102 U. S., 148; *Head v. Providence Ins. Co.*, 2 Cranch [U. S.], 169; *Lyons v. Perry Stove Co.*, 86 Tex., 143; *Orr v. Thompson*, 35 S. W. Rep. [Tex.], 473; *Thomas v. West Jersey R. Co.*, 101 U. S., 81; *Richie v. Ashbury Iron Co.*, L. R., 7 H. L. [Eng.], 633; *Sutton Mfg. Co. v. Hutchinson*, 63 Fed. Rep., 496.)

The property, when the corporation is actually insolvent, is a trust fund to which all creditors have a right to resort for the payment of the claims ratably. (*State v. Commercial State Bank*, 28 Neb., 677; *Ingwersen v. Edgecombe*, 42 Neb., 744; *Sutton Mfg. Co. v. Hutchinson*, 63 Fed. Rep., 496; *Bosworth v. Jacksonville Nat. Bank*, 64 Fed. Rep., 621; *Tillson v. Downing*, 45 Neb., 549; *Upton v. Tribilcock*, 91 U. S., 47; *Conover v. Hull*, 10 Wash., 673; *Ford v. Plankinton Bank*, 87 Wis., 363; *Ballin v. Merchants Exchange Bank*, 61 N. W. Rep. [Wis.], 1118.)

It is not the policy of the law to extend the privileges of corporate bodies beyond the express powers granted them by the legislature.

*Abbott, Selleck & Lane, amici curiæ:*

An insolvent corporation that has ceased to be a going concern has no power, in the distribution of its assets, to prefer one or more of its creditors to the exclusion of others. The relation of the directors toward the property and assets of the insolvent corporation is that of trustees for all the creditors. (*Adams v. Deyette*, 59 N. W. Rep. [S. Dak.], 215; *Atwater v. American Exchange Bank*, 38 N. E. Rep. [Ill.], 1019; *Marr v. Bank of West Tennessee*, 4 Cold.

[Tenn.], 471; *Swyer v. Hoag*, 17 Wall. [U. S.], 620; *Sanger v. Upton*, 91 U. S., 60; *Adler v. Milwaukee Patent Brick Mfg. Co.*, 13 Wis., 63; *Messersmith v. Sharon Savings Bank*, 96 Pa. St., 443; *Consolidated Tank Line Co. v. Kansas City Varnish Co.*, 45 Fed. Rep., 7; *Turnbull v. Prentis Lumber Co.*, 21 N. W. Rep. [Mich.], 379; *Hastings v. Drew*, 76 N. Y., 9; *Tompson v. Huron Lumber Co.*, 30 Pac. Rep. [Wash.], 741; *Holbrook v. Peters*, 8 Wash., 344; *Harrigan v. Quay*, 26 S. W. Rep. [Tex.], 512.)

*Montgomery & Hall*, for defendants in error:

A private corporation, in failing circumstances, may prefer certain creditors. (*La Grange Butter-Tub Co. v. Nat. Bank of Commerce*, 26 S. W. Rep. [Mo.], 710; *Roseboom v. Whittaker*, 132 Ill., 81; *Moon Bros. v. Waxahachie Grain & Improvement Co.*, 35 S. W. Rep. [Tex.], 337; *Ballin v. Merchants Exchange Bank*, 61 N. W. Rep. [Wis.], 1118; *Buchanan v. Barnes*, 34 S. W. Rep. [Tenn.], 425; *Buell v. Buckingham*, 16 Ia., 284; *Hallam v. Indianola Hotel Co.*, 56 Ia., 178; *Garrett v Burlington Plow Co.*, 70 Ia., 697; *Warfield v. Marshall County Canning Co.*, 72 Ia., 666; *Rollins v. Shaver Wagon & Carriage Co.*, 80 Ia., 380; *Gould v. Little Rock, M. R. & T. R. Co.*, 52 Fed. Rep., 680; *Allis v. Jones*, 45 Fed. Rep., 148; *Britton v. Boyer*, 27 Neb., 522; *Davis v. Scott*, 27 Neb., 642; *Brown v. Furniture Co.*, 58 Fed. Rep., 286; *Fogg v. Blair*, 133 U. S., 534; *Smith v. McGroarty*, 136 U. S., 237; *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S., 371; *Lininger v. Raymond*, 12 Neb., 19; *Deitrich v. Hutchinson*, 20 Neb., 52; *Duncomb v. New York H. & N. R. Co.*, 84 N. Y., 190; *Coats v. Donnell*, 94 N. Y., 168; *Dabney v. Bank of South Carolina*, 3 S. Car., 156; *Stratton v. Allen*, 16 N. J. Eq., 229; *Wilkinson v. Bauerle*, 41 N. J. Eq., 635; *Covert v. Rogers*, 38 Mich., 363; *Bank of Montreal v. Potts*, 51 N. W. Rep. [Mich.], 512; *State v. Bank of Maryland*, 6 Gill & J. [Md.], 205; *Catlin v. Eagle Bank*, 6 Conn., 233; *Smith v. Skeary*, 47 Conn., 47; *Foster v. Mullanphy Planing Mill Co.*, 92 Mo., 79; *Alberger v. National Bank of Commerce*, 27 S. W. Rep. [Mo.], 657; *Meyer v. American Chair Co.*, 32 S. W. Rep.

[Mo.], 300; *Dana' v. United States Bank*, 5 W. & S. [Pa.], 245; *Ashhurst's Appeal*, 60 Pa. St., 314; *Ringo v. Bisco*, 13 Ark., 563; *Worthen v. Griffith*, 28 S. W. Rep. [Ark.], 286; *Planter's Bank v. Whittle*, 78 Va., 737; *Warner v. Mower*, 11 Vt., 390; *Arthur v. Commercial & B. Bank*, 17 Miss., 430; *Palmer v. Hutchinson*, 11 So. Rep. [Miss.], 789; *O'Bear Jewelry Co. v. Volfer*, 17 So. Rep. [Ala.], 525; *Hospes v. Northwestern Mfg. Co.*, 50 N. W. Rep. [Minn.], 1117; *Reichwald v. Hotel Co.*, 106 Ill., 439; *Illinois Steel Co. v. O'Donnell*, 41 N. E. Rep. [Ill.], 185; *Blair v. Illinois Steel Co.*, 42 N. E. Rep. [Ill.], 895.)

*Charles B. Keller*, also for defendants in error:

A receiver cannot be garnished. (*Field v. Jones*, 11 Ga., 413; *Columbia Book Co. v. De Golyer*, 115 Mass., 67; *Richards v. People*, 81 Ill., 551; *Taylor v. Gillelan*, 23 Tex., 508; *Blake Crusher Co. v. Town of New Haven*, 46 Conn., 472; *Atlas Bank v. Nahant Bank*, 23 Pick. [Mass.], 480; *Hubbard v. Hamilton Bank*, 7 Met. [Mass.], 346; *McGowan v. Myers*, 66 Ia., 103; *Noe v. Gibson*, 7 Paige Ch. [N. Y.], 513; *Hills v. Parker*, 111 Mass., 508; *Northfield Knife Co. v. Sharpleigh*, 24 Neb., 635; *Rogers v. Corning*, 44 Barb. [N. Y.], 229.)

The overwhelming array of decisions supports the right of an insolvent corporation to prefer one or more creditors to the exclusion of others. (*Pondville Co. v. Clark*, 25 Conn., 97; *New Haven Savings Bank v. Bates*, 8 Conn., 505; *Hopson v. Ætna Axle & S. Co.*, 50 Conn., 597; *Southern White Lead Co. v. Haas*, 73 Ia., 404; *Warren v. First Nat. Bank*, 149 Ill., 10; *Ragland v. McFall*, 27 N. E. Rep. [Ill.], 75; *Glover v. Lee*, 140 Ill., 102; *Peterson v. Brabrook Tailoring Co.*, 37 N. E. Rep. [Ill.], 42; *Brabrook v. Belden Bros.*, 40 Ill. App., 326; *Warren v. First Nat. Bank*, 38 N. E. Rep. [Ill.], 122; *Beach v. Miller*, 22 N. E. Rep. [Ill.], 464; *Mullanphy Bank v. Schott*, 26 N. E. Rep. [Ill.], 640; *Atwater v. American Exchange Bank*, 38 N. E. Rep. [Ill.], 1017; *Paulding v. Chrome Steel Co.*, 94 N. Y., 334; *Varnon v. Hart*, 119 N. Y., 101; *Town v. Bank of River Raisin*, 2 Doug. [Mich.], 530; *Vail v. Jameson*, 7 Atl. Rep. [N. J.], 520; *Bergen v.*

*Porpoise Fishing Co.*, 8 Atl. Rep. [N. J.], 23; *Burr v. Mc-Donald*, 3 Grat. [Va.], 216; *Pyles v. Riverside Furniture Co.,* 2 S. E. Rep. [W. Va.]; 909; *Hulings v. Hulings Lumber Co.,* 18 S. E. Rep. [W. Va.], 620; *Union Bank v. Ellicott*, 6 Gill & J. [Md.], 363; *Ex parte Conway*, 4 Ark., 303; *Whitwell v. Wareur*, 20 Vt., 425; *Sargent v. Webster*, 13 Met. [Mass.], 497; *Pond v. Framingham & T. R. Co.*, 130 Mass., 194; *Hospes v. Northwestern Mfg. Co.*, 48 Minn., 174; *Weihl v. Atlanta Furniture Co.*, 15 S. E. Rep. [Ga.], 282; *Ardesco Oil Co. v. North American Oil & Mfg. Co.*, 66 Pa. St., 375; *United States v. Bank of United States*, 8 Rob. [La.], 262; *Bank of United States v. Huth*, 4 B. Mon. [Ky.], 429; *Gibson v. Goldthwait*, 7 Ala., 281; *Corey v. Wadsworth*, 11 So. Rep. [Ala.], 350; *Goodyear Rubber Co. v. Scott*, 11 So. Rep. [Ala.], 370; *Globe Iron Roofing Co. v. Thatcher*, 6 So. Rep. [Ala.], 367; *Henderson v. Indiana Trust Co.*, 40 N. E. Rep. [Ind.], 516; *DeCamp v. Alward*, 52 Ind., 468; *Schufeldt v. Smith*, 31 S. W. Rep. [Mo.], 1039; *City of St. Louis v. Alexander*, 23 Mo., 524; *Kitchen v. St. Louis, K. C. & N. R. Co.,* 69 Mo., 259; *Roan v. Winn*, 93 Mo., 503; *Williams v. Jones,* 23 Mo. App., 132; *Slavens v. Cook Drug Co.*, 30 S. W. Rep. [Mo.], 1025; *Hills v. Stockwell & D. Furniture Co.*, 23 Fed. Rep., 432; *Lippencott v. Shaw Carriage Co.*, 25 Fed. Rep., 577; *Milroy v. Eage*, 30 Fed. Rep., 544; *White v. Pettes*, 30 Fed. Rep., 864; *Sanford Fork Co. v. Howe, Brown & Co.*, 157 U. S., 312; *Graham v. La Crosse & M. R. Co.*, 102 U. S., 148; *Wabash, St. L. & P. R. Co. v. Ham*, 114 U. S., 587; *Hawkins v. Glenn*, 131 U. S., 319.)

*Mahoney, Minahan & Smyth*, also for defendants in error.

*W. W. Morsman, Harwood, Ames & Pettis, Capps & Stevens, John A. Casto*, and *J. B. Cessna*, filed printed arguments in favor of the points urged on behalf of defendants in error.

RYAN, C.

In the district court of Douglas county the Robinson & Stokes Company, a corporation, petitioned for and ob-

tained a receiver.   In the petition, which was filed on the 16th day of November, 1892, it was alleged that the defendants, the Commercial National Bank, Anastatia Burnette, and the National Bank of Commerce had each procured to be levied attachments upon the wares and merchandise of the plaintiff, and that, to prevent irreparable loss by reason of certain facts pleaded, it was necessary that the plaintiff's factory, wherein its goods and wares were situated, should be kept in operation.   The receiver was appointed, as prayed, to operate said factory and collect outstanding debts due the plaintiff.   From the proceeds of the sales of merchandise it seems that the claims of the defendants above named were fully paid. The Commercial National Bank, one of these defendants, had in its possession book accounts and bills receivable of the plaintiff as collateral security to its claim, and it is in respect to the proper distribution of the proceeds of these that this controversy exists between the intervenors, May Bros. on one hand and T. A. Shaw & Co. on the other.   By its petition of intervention the firm of May Bros. founded its claim upon the following written agreement:

"OMAHA, November 15, 1892.

"Whereas, we are indebted to May Bros., of Fremont, Nebraska, in the sum of $5,000; and whereas, we have assigned all our book accounts and bills receivable to the Commercial National Bank of Omaha, Nebraska, as collateral security for our indebtedness to said bank (excepting thirteen hundred dollars assigned to First National Bank, Marshalltown, Iowa); and whereas, we have also assigned said book accounts and bills receivable as aforesaid to Mrs. Anastatia Burnette as collateral security to secure the sum of about $11,500, subject to that of the bank as aforesaid; and whereas, we have further assigned said book accounts and bills receivable as aforesaid to the National Bank of Commerce to secure the sum of about $6,000, subject to the aforesaid assignments: Now, therefore, we hereby assign all our right, title, and

interest in and to said book accounts and bills receivable to said May Bros., of Fremont, Nebraska, as collateral security for said indebtedness of $5,000, subject, however, to the rights of each and all of the aforesaid assignees, as hereinbefore specified."

The right of the firm of T. A. Shaw & Co. to the amount in controversy was, in its petition of intervention, predicated upon averments that on November 18, 1892, said firm had brought its action in the district court of Douglas county against the Robinson & Stokes Company, and had on the same day caused to be garnished the Commercial National Bank. On motion of May Bros. the amount in controversy was ordered paid to May Bros., and it is for a review of this order that T. A. Shaw & Co. have prosecuted error proceedings to this court.

It appears from the evidence that after nightfall of November 15, 1892, there were present in the law office of Montgomery, Charlton & Hall the president, the secretary, and the attorney of the Robinson & Stokes Company and certain attorneys representing the defendants named in the petition for a receiver, and that there was at said time and place adopted by the Robinson & Stokes Company this resolution: "Whereas this company is indebted to the Com. Nat. Bank, of Omaha, Nebraska, in the sum of $40,000; and whereas said bank is demanding security for the payment of said indebtedness, now therefore, be it resolved that the Pres. and Secy. of this Co., on behalf of the Co., be authorized to assign to May Bros., Fremont, Neb., all their notes, bills receivable, accounts, books of accounts, demands and claims of every kind and name owing to and belonging to this Co., subject to prior assignments as collateral for the payment of the indebtedness of this Co. to said May Bros. evidenced by a certain promissory note calling for $5,000 in favor J. T. Robinson, R. E. Sears, T. H. Burnette, G. E. Stokes." The parties who are named after the words "in favor" seem to have been concerned in the Robinson & Stokes Company as officers and stockholders. On September 7,

1893, there were the following proceedings, as shown by the journal entry in this case: "The above cause coming on this day to be heard upon the exceptions of May Bros., intervenors, to the report of the receiver and the exceptions of Theodore A. Shaw and others to the report of the receiver, and the exceptions of the Robinson & Stokes. Company to the report of the receiver, and, after hearing the evidence and the argument of counsel, and the court being fully advised in the premises overrules the exceptions of Theodore A. Shaw and others to the report of the receiver so far as the same pertains or relates to the power of a corporation to prefer a creditor and to prefer the parties which the said Robinson & Stokes Company did prefer in this case, to which the said Theodore A. Shaw and others except." Conformably with the above ruling the receiver was directed to pay to May Bros. the amount in dispute. In the petition in error there is assigned the overruling of the exceptions above noted, but we have been unable to find in the record any exception of the nature indicated. Indeed, the report of the receiver very properly dealt only with what he had done, and how much he held in his hands subject to the order of the court. The record therefore must be assumed to have described the contention of counsel for Shaw & Co. as exceptions of the nature indicated, and the question to be determined is thus limited to the power of an insolvent corporation, under any circumstances, to prefer one of its creditors. It would be useless to attempt a review of all the cases cited on this proposition, and we shall therefore take up the contentions of plaintiff in error in the order in which they are presented by its brief and with reference to each express our views in a general way.

It is first contended that the transfer of November 15 by the Robinson & Stokes Company amounted in law to a general assignment for the benefit of creditors. This question is not presented by the order assailed by the petition in error, for this is not an appeal from a decree

which presents all questions for trial *de novo*, but is a proceeding in error to review an order affecting a substantial right, made in a special proceeding determined upon an exception limited to a certain matter which was the abstract right of an insolvent corporation to prefer certain creditors.

It is next urged that the directors of an insolvent corporation are trustees for its creditors; that is to say, upon the insolvency of a corporation, its directors become mere trustees to hold its property for the benefit of its creditors, for, as it is argued, a corporation's insolvency is, civilly, its death. If the proposition that at the instant a corporation becomes insolvent it is dead is conceded, there would be no question that it could not afterwards transact business of any kind, and plaintiff in error would be entitled to the relief he prays, unless, perchance, this principle is too far-reaching in its consequences. Let us suppose that the Robinson & Stokes Company was civilly dead on the 15th of November, 1892, and that the transfer of its assets which precluded the transaction of business by it was conclusive evidence that as a corporation it had no further existence, and what inevitably follows? In the first place it could not have commenced and maintained this action for the appointment of a receiver and the winding up of its business affairs, for a dead person cannot be plaintiff in an action or civil proceeding. In the next place the firm of T. A. Shaw & Co. would have no standing in this case, for their attachment action was begun on November 16 and was prosecuted, according to their own argument, against a dead person. Other general considerations point to the same result, one of which is that a corporation may, in an insolvent condition, do business for years and, if the contention of the plaintiff in error is correct, its transactions during this time be found finally to be absolutely void. We are now speaking of the status of an insolvent corporation unaffected by statutory provisions. Later we shall consider an argument based on a statutory enactment. The

functions of such a corporation may be suspended, and such a suspension must inevitably accompany its death; but from these predicates it does not necessarily result that a suspension of functions always implies death. As to the proposition that the directors of an insolvent corporation hold its property in trust for its creditors the same observation applies, for, in a certain sense, this is true, and yet it by no means follows that the law impresses this property with such a trust as may be enforced only in a court of equity. If the funds of an insolvent corporation are purely trust funds in the hands of its directors as trustees, it would follow that, in any action of creditors of such corporation to subject said funds to the payment of their claims, the trustees should be made defendants. Among all the cases cited we have observed none in which the creditor of an insolvent corporation has proceeded against its directors on the assumption that it should be required that they should execute a trust with respect to property of the corporation in their possession. On general principles this would seem very significant. Plaintiff in error, however, argues that insolvency operates the dissolution of a corporation, and, therefore, that the provisions of sections 62 *et seq.*, chapter 16, Compiled Statutes, countenance the trust fund theory and authorize the very proceedings, which, as we have just remarked, we have never found to have been resorted to. Section 62, above referred to, provides: "Upon the dissolution, by the expiration of the terms of its charter or otherwise, of any corporation now existing or hereafter created, and unless other persons be appointed by the legislature or by some court of competent authority, the directors or managers of the affairs of such corporation acting last before the time of its dissolution, by whatever name they may be known in law, and the survivors of them, shall be the trustees of the creditors and stockholders of the corporation dissolved, and shall have full power to settle the affairs of the same, collect and pay outstanding debts and divide

among the stockholders the moneys and property that shall remain, in proportion to the stock of each stockholder paid up, after the payment of debts and necessary expenses," etc. By sections 63, 64, 67, and 68 of chapter 16, Compiled Statutes, provisions are made for prosecuting or enforcing pending or necessary suits in the name of the dissolved corporation where found necessary. It is provided by section 65 of said chapter 16: "The title of all real estate belonging to any such corporation shall, at the time of the dissolution of the same, pass to the trustees of such corporation, who shall have full power and authority to sell and dispose of any such real estate, in such manner and upon such terms as may be thought best for the interest of the creditors and stockholders, and, upon any such sale to make a good and sufficient title therefor." If, as contended by the plaintiff in error, an insolvent corporation is to be deemed a dissolved corporation, it would follow under the provisions of the section just quoted that the directors of such insolvent corporation are expressly authorized to sell and dispose of its real property for the interests of not only its creditors but of its stockholders as well. It is not usually necessary to provide with reference to stockholders when a corporation becomes insolvent, for in that event the creditors are generally compelled to appropriate all its assets. The contentions of plaintiff in error then are: First, that on general principles the entire assets of an insolvent corporation constitute a trust fund and cannot be disposed of for the payment of its debts; and, second, under the above statutory provisions that if its assets are real property they may be sold by the directors and the proceeds of such sale be paid over by such directors, as shall be thought best for the interests of the creditors and the stockholders. It seems to us that these are inconsistent propositions and that it is very unreasonable to suppose an insolvent corporation cannot transfer its personal property but that the directors, as trustees, may sell and dispose of its real property. We

are of the opinion that the dissolution contemplated in the above statute is the voluntary dissolution provided for by the two-thirds vote of the members of the corporation under section 134, chapter 16, Compiled Statutes, or the expiration of limitation of charter, the loss of membership, the surrender of its franchise as a corporation, or forfeiture by non-user or misuser described in 2 Morawetz, Private Corporations, p. 1005, 2 Beach, Private Corporations, secs. 780, 782. The full purport of what is expressed or implied by the statement that the assets of an insolvent corporation are a trust fund for the benefit of its creditors is expressed in the following cases:

In *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S., 371, 14 Sup. Ct. Rep., 127, Mr. Justice Brewer said: "The expression often used that the property of a corporation constitutes a 'trust fund,' for its creditors, only means that when the corporation is insolvent and the court of equity has possession of its assets for administration, such assets must be appropriated to the payment of its debts before any distribution to the stockholders, but as between the corporation itself and its debtors, the former does not hold its property in trust, or subject to a lien in favor of its creditors in any other sense than does an individual debtor."

In *Fogg v. Blair*, 133 U. S., 534, Field, J., said: "We do not question the general doctrine invoked by the appellant that the property of a railroad company is a trust fund for the payment of its debts, but do not perceive any place for its application here. That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

In *Hospes v. Northwestern Mfg. & Car Co.*, 50 N. W. Rep. [Minn.], 1117, it is said by Mitchell, J., speaking for the whole court: "This trust fund doctrine, commonly called the 'American doctrine,' has given rise to much confusion of ideas as to its real meaning and much conflict of decision in its application. To such an extent has this been the case that many have questioned the accuracy of the phrase, as well as doubted the necessity or expediency of inventing any such doctrine. While a convenient phrase to express a certain general idea, it is not sufficiently precise or accurate to constitute a safe foundation upon which to build a set of legal rules. The doctrine was invented by Justice Story in *Wood v. Dummer*, 3 Mason [U. S.], 308, which called for no such invention, the fact in that case being, that a bank divided up two-thirds of its capital among its stockholders, without providing funds sufficient to pay its outstanding bill-holders. Upon old and familiar principles, this was a fraud on creditors. Evidently, all that the eminent jurist meant by the doctrine was, that corporate property must be first appropriated to the payment of the debts of the company before there can be any distribution of it among stockholders—a proposition that is sound, upon the plainest principles of common honesty. * * * The phrase that 'the capital of the corporation constitutes a trust fund for the benefit of creditors' is misleading. The corporate property is not held in trust, in any proper sense of the term. A trust implies two estates or interests— one equitable and one legal—one person as trustee holding the legal title, while another as the *cestui que trust* has the beneficial interest. Absolute control and power of disposition are inconsistent with the idea of a trust. The capital of a corporation is its property. It has the whole beneficial interest in it, as well as the legal title. It may use the income and profits of it, and sell and dispose of it, as a natural person. It is a trustee for its creditors in the same sense, and to the same extent as a natural person, but no further."

In *Wabash, St. L. & P. R. Co. v. Ham*, 114 U. S., 587, it is said: "The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when the corporation is lawfully dissolved and all its business wound up, or when it is insolvent, all its creditors are entitled, in equity, to have their debts paid out of the corporate property, before any distribution thereof among the stockholders. It is also true, in the case of a corporation, as in that of a natural person, that any conveyance of the property of the debtor, without authority of law and in fraud of existing creditors, is void as against them." This court has never had occasion to define its views of the subject under discussion, though it has recognized the existence of a personal trust relation between the officers of a corporation and its creditors.

In *Gorder v. Plattsmouth Canning Co.*, 36 Neb., 549, there was this holding as reflected in the fourth paragraph of the syllabus: "The relation of the directors to stockholders of a corporation is of a fiduciary character and their contracts and dealing with respect to the corporate property will be carefully scrutinized by the courts. Such contracts are not, however, necessarily void. Where it is clear that the transaction is in good faith on the part of the director and beneficial to the corporation which has, with the sanction of the stockholders, received and appropriated the consideration without offering to make restitution, it may be upheld when assailed even in a court of equity."

In *Ingwersen v. Edgecombe*, 42 Neb., 740, there was again involved the right of an officer to secure to himself a preference, and POST, J., delivering the opinion of this court said: "But the view which may be said to rest upon the soundest reasons and is sanctioned by the decided weight of authority is, that when a corporation becomes insolvent, its property and assets constitute a trust fund for the benefit of its creditors and that the directors and officers in possession thereof, being trustees for all the creditors, cannot take advantage of their position to se-

31

cure a preference for themselves but must share ratably with other creditors." In this last case it was held that the relations of the officers to the corporation were such that under the circumstances it amounted to securing an undue preference for one officer with the concurrence of another officer, to obtain security of an indebtedness due to himself from the corporation. The trust spoken of as having been violated was such as is implied from the relations and implied duties of an officer of a corporation toward his principal. This is illustrated by the holding in *Gorder v. Plattsmouth Canning Co., supra,* that upon the showing therein made of fairness in every respect the mortgage of property of the corporation in favor of certain of its officers was valid. If what, in *Hospes v. Northwestern Mfg. & Car Co., supra,* was called the "American doctrine" of trust funds had been applied, this holding would have been impossible, no matter how meritorious the claim secured.

It seems to us that the correct principle is enunciated in the federal cases above cited and in *Hospes v. Northwestern Mfg. & Car Co., supra.* A court of equity, at the instance of proper parties in a proper proceeding, can, when the corporation becomes insolvent, administer such relief as the circumstances of each case may demand. The insolvency of the corporation, when it gave a preference, would in such a proceeding be a proper matter for consideration. If the corporation has fraudulently conveyed or incumbered its property, such property may be followed and subjected to the payment of the debts of the corporation. If the corporation has disposed of its property under unusual conditions, that fact is a circumstance properly to be taken into account. The effects of these circumstances are not properly determinable as matters of law, and we think it is from the failure to bear this in mind that plaintiff in error asks this court inflexibly to enforce the rule that an insolvent corporation cannot, in any case, prefer one of its creditors. In each case as it arises the question must be whether or not there has

been a disposition of the property of the corporation for the purpose of making a fraudulent preference or for other illegal purposes. As against a corporation in the class of actions of which we are now speaking, creditors have the same remedies and none other than against an individual debtor. The inferences to be deduced from the proofs are inferences of fact and not of law. It may be that the inference is unavoidable; it is none the less an inference of fact. Section 20, chapter 32, Compiled Statutes, provides that, "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact and not of law," etc. The right of a debtor in good faith to prefer *bona fide* creditors has been repeatedly recognized by this court. (*Lininger v. Raymond*, 12 Neb., 19; *Grimes v. Farrington*, 19 Neb., 48; *Nelson v. Garey*, 15 Neb., 531; *Bierbower v. Polk*, 17 Neb., 268; *Costello v. Chamberlain*, 36 Neb., 45; *Kilpatrick-Koch Dry Goods Co. v. McPheely*, 37 Neb., 800; *Jones v. Loree*, 37 Neb., 816; *Farwell v. Wright*, 38 Neb., 445; *Kavanaugh v. Oberfelder*, 37 Neb., 649; *Sherwin v. Gaghagen*, 39 Neb., 238; *Hewitt v. Commercial Banking Co.*, 40 Neb., 820; *Grand Island Banking Co. v. Costello*, 45 Neb., 119; *Kilpatrick-Koch Dry Goods Co. v. Strauss*, 45 Neb., 793; *Powell v. Yeazel*, 46 Neb., 225.) While it may be true that from the inherent nature of a corporation, inferences unfavorable to a preference by it of certain of its creditors are justifiable from facts which would not sustain the same inferences with respect to a preference by a natural person, we cannot believe that the abstract legal right of making a preference in one class of cases is, by law, more restricted than is the other. The judgment of the district court is

AFFIRMED.

NORVAL, J., not sitting.